[Civ. No. 17922.   First Dist., Div. One.   Aug. 27, 1959.]

SIDNEY KEVICH et al., Appellants, v. R. L. C., INC.
(a Corporation), Respondent.

Morris Lowenthal and Juliet Lowenthal for Appellants.

Ben K. Lerer and George M. Naus for Respondent.

WOOD (Fred B.), J.—By this action plaintiffs seek monetary relief from defendants Morris Bernstein and R. L. C., Inc., a corporation. The judgment denied them recovery except to the extent of $116.67 as against the defendant corporation, from which portion only of the judgment plaintiffs have appealed.

Commencing in September, 1951, plaintiffs were tenants of the store premises at Number 40 Lakeshore Plaza under a lease from Pacific Coast Construction Company for a term ending November 14, 1956, at a monthly rental of $350, conducting thereat a retail toy, stationery, card and gift shop business.

On April 20, 1955, plaintiffs delivered possession to the defendant corporation upon an oral sublease at a rental of $350 per month. Upon such subletting there ensued negotiations for a written lease. A writing was agreed upon but not signed. Thereafter, in October, 1955, plaintiffs gave the sublessee notice that the rent would increase to $1,000 a month commencing December 1, 1955.

There were negotiations also for a concession from the defendant corporation to plaintiffs for the conduct of a toy, greeting card and similar business in the defendant's retail establishment.

At the time of the subletting plaintiffs left on the premises a neon sign and a number of tables and counters, of which they never regained possession.

Plaintiffs claim that the subletting to defendant corporation, the granting of a concession by the corporation to the plaintiffs, and the discontinuing of plaintiffs' business at the demised premises constituted a single, consummated transaction. They seek the increased rent from and after December 1, 1955, damages for defendant's failure to effectuate the proposed concession, the value of the goodwill of plaintiffs' business, the value of the sign, the tables and the counters, and recompense for plaintiff Sidney Kevich's services in planning and getting ready to engage in business as a concessionaire of defendant.

The trial court's findings were against plaintiffs upon all issues except its finding that defendant corporation had not paid the rent of the subleased premises for the period extending from April 21 through April 30, 1955, at the rate of $350 per month, plus interest thereon from May 1, 1955.

(1) It was found that independently and apart from the subletting, and disconnected from the consideration of the sublease, plaintiff Sidney Kevich and one Irving Viner, after the subletting, formed a partnership to negotiate with the defendant corporation to become (as partners) concessionaires of a toy department within the retail business organization

of the corporation; as such partners, Kevich and Viner carried on the negotiations until some day in the week beginning August 15, 1955, whereupon the negotiations collapsed; and no concession agreement was ever reached or entered into.

Mr. Bernstein's testimony supports this finding. He testified that he was first approached concerning a toy concession in September or October of 1954 by Mr. Viner and Mr. Kevich. The first time in 1955 that a concession was discussed with Kevich was when he was about to vacate the store. Bernstein told him he had no room. After Kevich vacated the premises, he kept coming into the main store reiterating his desire to have a concession within the store. Bernstein consistently told him that there was no room at that time. The defendant corporation was not very interested in selling toys. Kevich was not promised a concession if one became available but that he would be considered, because Bernstein discussed his concessions with his associates and could not absolutely promise one. In June or July, Kevich told Bernstein that that was the time to buy toys, and Bernstein told him he did not see the urgency of it as they had bought toys late in the season before. Kevich told him that he was going to buy toys for his California Street store and suggested buying for the concession. Bernstein told him that if he wanted to, he could buy and Bernstein would take what Kevich could not use when they opened a toy department, if Kevich did not get the concession and no one else had the concession. In July, Bernstein told Kevich that "evidently we would be unable to have a concession department in toys," and suggested that Kevich rent the Rene store nearby, referred to also as the dress shop, and put in a toy store there for the Christmas holidays. Kevich was told that if he could take the store, defendant would not carry toys. But Pacific Construction would not rent the store to Kevich. After Pacific Construction reported this to Kevich, Kevich informed Bernstein. That was the last conversation Bernstein and Kevich had on the subject.

■ (2) The testimony of plaintiffs' accountant concerning the financial history of the business tends to support the finding that the goodwill of the business conducted by plaintiffs at Number 40 Lakeshore Plaza was valueless.

Moreover, in the absence of a contract for purchase of the business or for its continuation as a concession, we perceive nothing in the record that could serve as a basis for charging

the defendant corporation with the loss of the business whatever its value may have been.

■ (3) The court found against plaintiffs' claim for $1,250 as the reasonable value of Sidney Kevich's time for two and a half months in getting ready to conduct business as a concessionaire of the defendant corporation. The failure of the parties to consummate negotiations for such a concession, supports the trial court's finding and conclusion that there was no basis for such a claim.

Plaintiffs seem to place some reliance upon Mr. Bernstein's testimony that when Kevich told him that June or July was the proper time to buy toys, Bernstein told Kevich to go ahead if he wanted to and whatever Kevich could not use defendant would take off his hands if Kevich did not get the concession and if no one else had the concession. This could hardly be considered as an agreement to compensate Kevich for his services as a buyer. Upon the contrary, it would appear that Kevich by buying in June or July, when he knew he did not have a concession agreement, did so in the hope he might eventually obtain a concession. If such were the fact, it was a business risk he took; at least it was susceptible of such an interpretation, one which we consider the trial court impliedly placed upon it.

■ (4) There is in the evidence substantial support for the finding that the sign, the tables and the counters were left on the premises when the plaintiffs went away in April, 1955, and were later abandoned by plaintiffs.

It is undisputed that Kevich left the tables and sign, and that he did not complain, or try to recover the sign after it was removed, nor protest the defendant's use of the tables. Moreover, there was testimony on behalf of defendants that Kevich told them the sign was worthless, and that Kevich removed certain property by truck but did not take the tables. From these circumstances, it is a fair inference that Kevich left the property " 'because he no longer desire[d] to possess it, or thereafter to assert any right or dominion over it.' " (*Lawrence* v. *Fulton*, 19 Cal. 683, 691.)

■ (5) The trial court found that in April, 1955, plaintiffs sublet the premises to the defendant corporation at a rental of $350 per month for a term of approximately 19 months ending on November 14, 1956, and pursuant to said sublease delivered possession on April 21, 1955; that ever since that date the defendant corporation has been in occu-

pation of the premises as a subtenant of plaintiffs under an oral sublease for an agreed term of approximately 19 months to terminate November 14, 1956, at an agreed rental of $350 per month, which has been fully paid except the sum of $116.67 for the last 10 days of April, 1955.

The court further found that in the course of the subleasing negotiations plaintiffs had said it would be a condition of change of possession that the sublease would be reduced to writing and executed by both sides, but on April 20 they waived that condition and delivered possession, whereupon it was orally agreed that plaintiffs would have their attorneys reduce the sublease to writing and present a draft to defendants for submission by the defendant corporation to its attorney. When the written terms were agreed upon the sublease would be written in final form and executed by both sides. Written terms were agreed upon about July 13, 1955, and the sublease was written in final form by defendant's attorney and delivered to Bernstein about August 9, 1955. Plaintiffs thereupon promised to call at Bernstein's office and execute the writing but they never did. At some time after August 9, 1955, plaintiffs lost interest in and abandoned their former requirement of a writing and in the execution of a writing and the defendant corporation acquiesced therein. There was never any failure or refusal by defendant in the matter of a writing.

These findings likewise are supported by the evidence. However, we are not convinced that this oral lease was in all respects valid. As an oral sublease of real property "for a longer period than one year" it was a "contract" declared "invalid" by the express terms of section 1624 of the Civil Code, there being no "note or memorandum thereof" in "writing, subscribed by the party sought to be charged."

Defendant advances the argument that this "invalidity" may be waived by the "party to be charged"; that defendant is the party to be charged; that defendant has waived the statutory "invalidity"; therefore, it is no concern of the plaintiffs that this sublease was not in writing. Defendant has made it abundantly clear that this argument does not rest upon any theory of estoppel against the plaintiffs. There is no contention that defendant has changed its position in reliance upon conduct of the plaintiffs which would make it inequitable for the latter to invoke the proscription of the statute. During oral argument upon this appeal, counsel for defendant said: "We as the defendant were the party to be

charged, and we were the only party who could raise the statute. . . . But as to the claims of sublease, we were the ones sought by the plaintiff to be charged in this matter, and that the defendant waived any defense under the Statute of Frauds. The defendant announced that the defendant would not object to any offer of oral testimony by the plaintiff, and we didn't.''

A major fallacy in this line of reasoning inheres in the assumption that the *defendant* is *always* the ''party to be charged'' and is the *only* ''party to be charged.'' Here, defendant was relying upon the oral sublease and invoking it against the plaintiffs, thereby constituting them the ''party to be charged.'' Moreover, another statute requires that the writing be ''subscribed by the party *creating, granting,* assigning, surrendering, or declaring'' a lease of real property for a term ''exceeding one year.'' (Code Civ. Proc., § 1971; emphasis added. See also Civ. Code, § 1091.) That, in our case, means subscription by the plaintiffs.

*Harper* v. *Goldschmidt,* 156 Cal. 245 [104 P. 451, 134 Am. St.Rep. 124, 28 L.R.A. N.S. 689], invoked by the defendant does not support defendant's thesis. That was a suit for specific performance against the vendee upon an oral contract for the sale of land. The vendee, citing section 1091 of the Civil Code and section 1971 of the Code of Civil Procedure, contended that the vendor, not the vendee, was the sole ''party to be charged.'' In overruling that contention the court did say that the statute in using that expression had reference to the defendant, ''the person charged in court with the performance of the obligation—the party defendant.'' (P. 248.) That was a correct statement if limited to the factual situation in the Harper case, where the defendant-vendee was the party sought to be charged. That the court intended those words in that limited sense clearly appears from the following statement in the same paragraph: ''it was not the vendor alone whom the statute of frauds and perjuries sought to protect, but the vendee equally. For, as is well said by Ruffin, C. J., speaking for the supreme court of North Carolina: 'The danger seems as great that a purchase at an exorbitant price may by perjury be imposed on one who did not contract for it, as that by some means a feigned contract of sale should be established against the owner of the land. Hence the act in terms avoids entirely every contract of which the sale of land is the subject, in respect of a party—that is, either party—

who does not charge himself by his signature, to it, after it has been reduced to writing.' (*Simms* v. *Killian,* 34 N.C. 252.)'' (P. 248.)

Another fallacy in defendant's chain of reasoning inheres in the assumption that by giving parol evidence of an oral sublease plaintiffs waived the objection they might otherwise have interposed. Plaintiffs alleged in their complaint that because of defendant's refusal to execute the proposed written lease plaintiffs were compelled to and did treat the subtenancy originally as one at will and later as a subtenancy from month to month; that prior to December 1, 1955, the monthly rent for the premises was the sum of $350 and thereafter was $1,000 per month. At the very outset of the trial counsel for plaintiffs said to the judge ''We are pleading the Statute of Frauds. We are the ones entitled to claim under that issue.'' Nothing in the record has been brought to our attention which indicates that plaintiffs at any time deviated from that position. There is no basis in that conduct for an inference of a waiver by the plaintiffs.

No express finding was made concerning the fact or the timeliness of a notice which in October plaintiffs gave the defendant increasing the rent from $350 to $1,000 per month, to be effective December 1, 1955.* Doubtless the trial court deemed such a finding immaterial and unnecessary in view of its conclusion that the oral lease for the period ending in November, 1956, was fully effective and operative.

The notice of change in the rent was given under authority of section 827 of the Civil Code. That section sanctions the giving of such a notice, changing the terms of a lease of land, if it is a lease ''from week to week, month to month, or other period less than a month.'' Such a notice when served upon the tenant ''shall of itself operate and be effectual to create

---

*By declaring all of the allegations of the second count to the complaint untrue the court found the following allegations, among others, untrue: ''commencing with the 1st day of December, 1955, said monthly rental has been and now is the sum of $1,000.00 per month, payable monthly in advance on the first day of each and every month of said subtenancy; said change in rental was made by notice in writing duly given by plaintiffs to defendant, R.L.C., Inc. on or about the 21st day of October, 1955; a copy of said notice in writing and of the letter transmitting the same to said defendant, R.L.C., Inc., are attached hereto and marked Exhibit 'A'.''

We do not think that the court intended thereby to find that no such notice was given. (Mr. Bernstein admitted the notice was received.) We think the court intended merely to find that no ''change in rental was made by [the] notice in writing'' mentioned in the second count of the complaint.

and establish, as a part of the lease, the terms, rents, and conditions specified in the notice, if the tenant shall continue to hold the premises after said notice takes effect.''

Defendant contends that under no theory was the giving of such a notice available to the plaintiffs. Because, says the defendant, this was not a tenancy ''from week to week, month to month, or other period less than a month.'' His argument seems to be two-fold: (1) if there was no valid sublease defendant obtained a mere license which, though revocable at any time, would not be subject to change of its terms by notice given under section 827; or, (2) if really a sublease but not for a term of years (because not in writing) it resulted in a tenancy at will, not a tenancy for a period such as one month or one week. The latter statement is partly true. In the beginning it was a tenancy at will but it could become a periodic tenancy according to the circumstances of the case, as they subsequently might develop.

When defendant took possession under the invalid oral sublease it became a tenant at will. It then continued in possession, paying a monthly rental, for some six or seven months before plaintiffs gave notice of an increase from $350 to $1,000 per month. By that time, it is probable, the tenancy had become a tenancy from month to month. (See *Phelan* v. *Anderson,* 118 Cal. 504, 505-506 [50 P. 685]; *Psihozios* v. *Humberg,* 80 Cal.App.2d 215, 220 [181 P.2d 699]; *Kingston* v. *Colburn,* 139 Cal.App.2d 623, 625 [293 P.2d 805]; 30 Cal. Jur.2d 169, Landlord and Tenant, § 42, note 19; 32 Am.Jur. 71-72, Landlord and Tenant, § 52, notes 3, 4 and 6; 6 A.L.R.2d 685, 725.)

We are not undertaking to so hold as a matter of law upon the basis of the record before us. There may be factors not fully developed at the trial by one party or the other. For example, it is not clear to us whether certain improvements and alterations and a certain lease to a third party were made by the defendant corporation before or after plaintiffs gave their notice of increase in the rental rate. Also, other facts of similar or opposite import may develop at a second trial if one is had.

Plaintiffs complain of the admission of two bits of testimony which they assert was inadmissible hearsay. We find no merit in this contention. In each case the questioned testimony was admissible to explain certain circumstances and we do not assume that the court admitted them as proof

of the facts embraced in that testimony. Moreover, those facts appear to be in evidence through testimony that was not hearsay. In any event, the admission of the questioned testimony was not prejudicial to the plaintiffs' case.

Plaintiffs also complain of the trial court's "impatience," pointing out some 25 incidents thereof. We are not impressed. Our reading of the record indicates to us that the trial judge was thoroughly conscientious and exhibited a great deal of patience, allowing considerable latitude in examination and cross-examination, and a good deal of repetition. We are similarly unimpressed by plaintiffs' assertions that the trial judge was "confused" concerning the issues under the pleadings and the significance of various items of evidence.

Except as to the issues involved in plaintiffs' claim for $650 per month of additional rent, commencing December 1, 1955, the findings of fact, conclusions of law and judgment are correct, amply supported by the evidence and the law, and should be affirmed. The remainder thereof is erroneous and must be reversed.

Accordingly, it is ordered that the judgment be reversed, with directions that the trial court revise the findings of fact and conclusions of law, take such further steps and proceedings in the action as may be meet and proper, and render judgment, all in accordance with the views herein expressed.

Bray, P. J., and Tobriner, J., concurred.