[No. D021960. Fourth Dist., Div. One. Feb. 10, 1997.]

BED, BATH & BEYOND OF LA JOLLA, INC., Plaintiff and Appellant,
v.
LA JOLLA VILLAGE SQUARE VENTURE PARTNERS et al.,
Defendants and Respondents.

868

870

## COUNSEL

Allan B. Weiss and Jock R. Davidson for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Daniel G. Lamb, Chris A. Knudsen and Mary Kathryn Kelley for Defendants and Respondents.

## OPINION

JONES, J.*—Plaintiff Bed, Bath & Beyond of La Jolla, Inc., negotiated for a lease of retail space in a shopping center owned by La Jolla Village Square Venture Partners.[1] The negotiated terms of the lease were reduced to a written agreement which was signed by plaintiff but never by La Jolla. Instead, La Jolla leased the subject premises for higher rent than that negotiated by plaintiff to defendant Linens 'N Things, Inc., a retail business in direct competition with plaintiff.[2] Plaintiff filed an action against La Jolla and Linens 'N Things, asserting causes of action for specific performance, breach of contract and fraud against La Jolla and causes of action for interference with contractual relations and prospective economic advantage against Linens 'N Things. The court granted summary adjudication against plaintiff on each of its causes of action except the one for fraud, concluding the alleged lease agreement was within the statute of frauds and Linens 'N Things' "fair competition" privilege was a complete defense to plaintiff's claim for interference with prospective economic advantage. Plaintiff later voluntarily dismissed its fraud cause of action.

On appeal plaintiff contends: (1) the alleged lease agreement between plaintiff and La Jolla is not rendered unenforceable by the statute of frauds;

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Defendants Gordon/Beck Venture # 1 and GBLJ, Inc., are general partners of defendant La Jolla Village Square Venture Partners. For convenience, we hereinafter refer to these defendants collectively as "La Jolla" and to Bed, Bath & Beyond as "plaintiff."

[2] Responding defendants Melville Realty and Melville Corporation are corporations related to Linens 'N Things. We hereinafter refer to these defendants collectively as Linens 'N Things, and to all six responding defendants collectively as "defendants."

(2) even if the alleged lease agreement is unenforceable due to the statute of frauds, it nevertheless can be the subject of a cause of action for intentional interference with a contractual relationship; (3) the court erred by ruling the "fair competition" privilege defeats plaintiff's cause of action for interference with prospective economic advantage as a matter of law; and (4) the court erred by entering judgment before filing a formal order after the hearing on Linens 'N Things' motion for summary adjudication of plaintiff's cause of action for interference with prospective economic advantage and in signing such order after plaintiff filed the instant appeal. We affirm.

## Factual and Procedural Background

From May 1992 through January 1993 plaintiff negotiated with representatives of La Jolla for a lease of retail space in La Jolla Village Square, a shopping center La Jolla was then in the process of building. In February 1993 La Jolla's legal representative in the negotiations presented plaintiff with four copies of a proposed written lease agreement and guaranty agreement to be executed by plaintiff and its guarantor, plaintiff's parent corporation. The cover letter accompanying these documents requested they be executed by plaintiff and its guarantor and returned to La Jolla's legal representative for "execution by the Landlord." Plaintiff signed the lease and its parent corporation signed the guaranty. The documents were then returned to La Jolla for execution.

La Jolla never executed the lease. In late March 1993 the representative of La Jolla who negotiated the proposed lease with plaintiff informed plaintiff that La Jolla intended to lease the subject premises to Linens 'N Things, plaintiff's competitor. Prior to that communication plaintiff was unaware that La Jolla had been negotiating with Linens 'N Things.

In April 1993 plaintiff filed its complaint in the instant action and later filed a first amended complaint. The first amended complaint included causes of action for specific performance, breach of contract, and fraud against La Jolla and causes of action for intentional interference with "economic relationship" and intentional interference with "prospective business agreement" against Linens 'N Things. The first amended complaint also included a cause of action for injunctive relief against all defendants, seeking to enjoin La Jolla from leasing the subject premises to Linens 'N Things.

Plaintiff's claims were challenged by two separate motions for summary adjudication. First, La Jolla and Linens 'N Things jointly moved for summary adjudication as to plaintiff's first, second, third and fifth causes of

action for specific performance, breach of contract, injunctive relief, and intentional interference with contractual relations, respectively. The court granted defendants' motion, concluding: "The Statute of Frauds, as set forth in Civil Code sections 1091 and 1624[, subdivision (d)] and Code of Civil Procedure section 1971, requires that the lease alleged by plaintiff be in writing, duly subscribed by the party to be charged. The factual predicate to each of the causes of action [challenged by defendants' motion] is a valid, enforceable lease."

Linens 'N Things then filed a separate motion for summary adjudication of plaintiff's sixth cause of action for intentional interference with prospective economic advantage. Linens 'N Things argued the undisputed facts established the "competition privilege" was a complete defense to plaintiff's sixth cause of action. Plaintiff filed a cross-motion for summary adjudication on the ground there was no defense to its sixth cause of action. The court granted Linens 'N Things' motion and denied plaintiff's, concluding Linens 'N Things established each of the elements of the competition privilege as a matter of undisputed fact.[3]

Shortly after the court granted Linens 'N Things' second motion for summary adjudication, plaintiff dismissed its only remaining cause of action, the fourth cause for fraud against La Jolla. Consequently, the court entered judgment in favor of defendants and against plaintiff.

## DISCUSSION

On appeal from a ruling on a motion for summary judgment, the appellate court conducts its own independent review of the moving and opposition papers and applies the same standard as the trial court in determining whether the motion was properly granted. The appellate court is not bound by the trial court's stated reasons for its ruling on the motion, as the appellate court reviews only the ruling and not its rationale. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].)

### I. *Statute of Frauds*

Plaintiff's principal contention on appeal is that the trial court erred by ruling the lease between plaintiff and La Jolla is subject to the statute of

---

[3]As discussed *infra*, the court did not file a formal order on Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action until after plaintiff filed this appeal, although its ruling is reflected by a minute order.

frauds. We conclude the trial court correctly ruled the statute of frauds renders the alleged lease agreement unenforceable.[4]

Three different "statutes of fraud" apply to bar enforcement of the alleged lease agreement in this case. Civil Code section 1624, subdivision (d) specifies, as a type of contract which is invalid unless it is in writing and subscribed by the party to be charged, "[a]n agreement . . . to lease real estate for a longer period than one year . . . ."

Civil Code section 1091 provides: "An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."

Similarly, Code of Civil Procedure section 1971 provides, in pertinent part: "No estate or interest in real property, *other than for leases for a term not exceeding one year*, . . . can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by the party's lawful agent thereunto authorized by writing." (Italics added.)

Thus, Civil Code section 1624, subdivision (d) requires that an agreement to lease property for a term longer than one year be in writing and signed by the "party to be charged" while Civil Code section 1091 and Code of Civil

---

[4]In opposition to defendants' first motion for summary adjudication (as well as on appeal), plaintiff argued the parties entered into an oral lease agreement on the same terms as the written lease attached to the complaint. In its reply to plaintiff's opposition (and in response to plaintiff's opening brief) La Jolla objected to plaintiff's "oral agreement" argument on the ground plaintiff's complaint is based entirely on a written agreement and contains no allegation of an oral agreement. Plaintiff now contends its first amended complaint alleges an oral agreement by virtue of the allegation in paragraph 15 that "La Jolla . . . and [plaintiff] negotiated in good faith a Lease Agreement for space within the Shopping Center."

Reading plaintiff's first amended complaint as a whole and its parts in their context (see *Kennedy* v. *Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 807 [50 Cal.Rptr.2d 736]), we do not believe it is reasonably construed as pleading an oral agreement. In paragraph 16, immediately following the allegation that the plaintiff and La Jolla negotiated a 10-year lease, plaintiff alleges they "entered into a written agreement for the lease of the subject space . . . ." Read together, paragraphs 15 and 16 clearly allege the parties negotiated terms which were then reduced to a written agreement "entered into" by the parties. Thus, La Jolla's argument that plaintiff's opposition to summary adjudication went beyond the scope of the pleadings has merit.

Be that as it may, it is immaterial whether plaintiff is limited to arguing it entered into a written lease with La Jolla (signed only by plaintiff) or can properly argue the parties made an oral agreement on the same terms, as our statute of frauds analysis applies equally to either theory.

Procedure section 1971 more specifically require that a lease of property for a term longer than one year be in writing and signed by the lessor. (See *Kevich* v. *R.L.C., Inc.* (1959) 173 Cal.App.2d 315, 321 [343 P.2d 402].) Whether viewed as an oral agreement or written agreement, plaintiff's alleged lease agreement is unenforceable because it is undisputed that La Jolla, the lessor and "party to be charged," never signed the draft instrument that plaintiff signed. (*Tabata* v. *Murane* (1944) 24 Cal.2d 221, 228 [148 P.2d 605] [agreements which are invalid under Civil Code section 1624 are unenforceable].)

■ Plaintiff contends the lease agreement is not subject to the statute of frauds because it possibly could have been performed within one year from the date of its making. Plaintiff's argument rests on two provisions in the unexecuted written lease. Article 3, subdivision (b) of the lease provided the tenant could terminate the lease before the rental term commenced if the landlord failed to begin certain preparatory work on the leased premises by June 1, 1993, or substantially complete that work by December 31, 1993. Article 3, subdivision (c) gave the landlord the right to terminate the lease before commencement of the rental term if the landlord was unable to obtain the various governmental permits and approvals required for construction of the premises despite exercising diligence and good faith in attempting to do so.

As authority for its position that these provisions take the lease out of the statute of frauds, plaintiff relies primarily on *Fisher* v. *Parsons* (1963) 213 Cal.App.2d 829 [29 Cal.Rptr. 210]. In *Fisher,* the plaintiff lessor sued the defendant lessee for breach of an oral lease agreement under which the defendant promised to rent office space in the plaintiff's building as long as the defendant remained in business and required office space. (*Id.* at pp. 832-833.) The *Fisher* court held the lease was not subject to the statute of frauds because its term possibly could have been less than one year. The court rejected the defendant's attempt to distinguish Civil Code section 1624, subdivision (a) concerning agreements that cannot be performed within one year generally, and the provision in subdivision (d) concerning agreements to lease real property for a period of more than one year.[5] The court stated: "Respondent's effort to differentiate between subdivisions 1 and 4 of the statute of frauds must prove sterile. Those subdivisions are applied indiscriminately to leases in this state and as if they were exact equivalents. Subdivision 1 refers to an agreement 'that by its terms is not to

---

[5]At the time *Fisher* was decided, those subdivisions were paragraphs 1 and 4, respectively. In 1985 the Legislature replaced the paragraphing numbering in Civil Code section 1624 with subdivision lettering. (Stats. 1985, ch. 1315, § 1, p. 4581.)

be performed within a year from the making thereof.' Subdivision 4: 'An agreement for the leasing for a longer period than one year.' The language of the two subdivisions expresses the same thought, that the agreement or lease must be so worded that it cannot be performed within a year." (*Fisher* v. *Parsons*, *supra*, 213 Cal.App.2d at p. 837.)

We disagree with *Fisher* that subdivisions (a) and (d) of Civil Code section 1624 express the same thought. Subdivision (a) applies to agreements in general which cannot be performed within one year, whereas subdivision (d) applies to lease agreements where the term or duration of the lease is longer than one year. Subdivision (d) is a more specific provision than subdivision (a) because the focus of subdivision (d) is not the overall agreement to lease, which may be terminable within one year of its making and prior to commencement of the actual lease term, but rather on the duration or term of the lease.

It is a settled rule of statutory construction that statutes relating to the same subject matter must be read together and harmonized if possible. (*Brown* v. *West Covina Toyota* (1994) 26 Cal.App.4th 555, 565-566 [32 Cal.Rptr.2d 85].) When Civil Code section 1624, subdivision (d) is read in conjunction with Civil Code section 1091 and Code of Civil Procedure section 1971, it is clear the Legislature intended that an agreement to lease real property for a term exceeding one year cannot be enforced by a lessee unless it is in writing and signed by the lessor.[6]

The distinction between subdivisions (a) and (d) of Civil Code section 1624 was immaterial in *Fisher* because the oral lease in that case was of an indefinite term which could have expired in less than one year from the date it commenced. *Fisher* applied the principle of subdivision (a)—i.e., that an oral contract is invalid only when by its own terms it cannot be performed within one year from the date it is made—to subdivision (d), concluding "[s]ubdivision [(d)] does not apply to a lease for an indefinite term which can be performed within a year." (*Fisher* v. *Parsons*, *supra*, 213 Cal.App.2d at p. 837.) *Fisher* could apply either subdivision (a) or (d) of Civil Code section 1624 indiscriminately because the result under either provision was the same.

---

[6]Unlike Civil Code section 1091 and Code of Civil Procedure section 1971, which focus strictly on the transfer of the leasehold estate and the requirement that the transferor (i.e., lessor) sign a written instrument of conveyance, Civil Code section 1624, subdivision (d) more generally requires subscription by the "party to be charged," which could be either the lessor or lessee. Thus, section 1624, subdivision (d) would also protect a lessee from enforcement of an agreement to lease real property for a longer term than one year where the agreement is not in writing and signed by the would-be lessee.

In contrast, the distinction between subdivisions (a) and (d) of Civil Code section 1624 is critical in the instant case. If we were to strictly apply subdivision (a) without regard to subdivision (d), plaintiff's alleged agreement to lease arguably would not fall within the statute of frauds because it could be performed within one year (assuming termination prior to commencement of the lease term due to failure of a condition precedent constitutes "performance"). On the other hand, application of Civil Code section 1624, subdivision (d), along with Civil Code section 1091 and Code of Civil Procedure section 1971, renders the alleged lease unenforceable despite its pre-commencement termination provisions because the actual *term* of the lease exceeds one year.

It is a fundamental principle that " ' "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." ' [Citations.]" (*Prudential Reinsurance Co.* v. *Superior Court* (1992) 3 Cal.4th 1118, 1148 [14 Cal.Rptr.2d 749, 842 P.2d 48] (dis. opn. of Kline, J.).) Since Civil Code section 1624, subdivision (d) concerning agreements to lease real property for a term longer than one year is a more specific provision than Civil Code section 1624, subdivision (a) concerning agreements in general that cannot be performed within one year from the date of making, subdivision (d) controls over subdivision (a) where the two provisions conflict.[7]

Therefore, we hold that an agreement to lease real property for a term exceeding one year is within the statute of frauds of Civil Code section 1624, subdivision (d) regardless whether such agreement provides that it may be canceled or terminated within one year of the date of its making and prior to commencement of the lease term. Accordingly, the trial court correctly concluded the alleged lease agreement in the instant case was unenforceable under the statute of frauds, as it was an agreement to lease real property for a term exceeding one year and was not signed by the lessor, La Jolla.

## II. *Intentional Interference With a Contractual Relationship*

Plaintiff contends that even if the alleged lease agreement is unenforceable under the statute of frauds, plaintiff may nevertheless maintain a

---

[7]Accordingly, the cases cited by plaintiff applying Civil Code section 1624, subdivision (a) to agreements other than lease agreements (e.g., employment contracts) are inapposite.

cause of action against Linens 'N Things for intentional interference with the contractual relationship between plaintiff and La Jolla.[8]

The question of whether a third party's interference with a voidable or unenforceable contract can form the basis of a cause of action for intentional interference with contractual relations was recently addressed in *PMC, Inc.* v. *Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579 [52 Cal.Rptr.2d 877]. *PMC* held that ". . . a cause of action for intentional interference with contract requires an underlying *enforceable* contract. Where there is no existing *enforceable* contract, only a claim for interference with prospective advantage may be pleaded. To [conclude] otherwise unnecessarily confuses the two torts and fails to recognize their inherent differences." (*Id.* at p. 601.)

*PMC*'s recognition of the inherent differences between the two interference torts was based in large part on the discussion of those differences in *Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376 [45 Cal.Rptr.2d 436, 902 P.2d 740]. *Della Penna* addressed "the need to draw and enforce a sharpened distinction between claims for tortious disruption of an *existing* contract and claims that a *prospective* contractual or economic relationship has been interfered with by the defendant." (*Id.* at p. 392.) Emphasizing that the two torts are analytically different, *Della Penna* stated:

"The courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement. Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned. Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties.

"A doctrine that blurs the analytical line between interference with an existing business contract and interference with commercial relations *less* than contractual is one that invites both uncertainty in conduct and unpredictability of its legal effect. The notion that inducing the breach of an existing contract is simply a subevent of the 'more inclusive' class of acts that interfere with economic relations, while perhaps theoretically unobjectionable, has been mischievous as a practical matter. Our courts should, in

---

[8]The parties agree that plaintiff's fifth cause of action for "intentional interference with economic relationship" is a claim for interference with an existing contractual relationship. (It contains the allegation that Linens 'N Things "induced [La Jolla] to breach its Lease Agreement with [plaintiff].")

short, firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant." (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th at p. 392.)

*PMC* also adopted the reasoning of the New York high court in *Guard-Life Corp.* v. *S. Parker Hardware Mfg.* (1980) 428 N.Y.S.2d 628 [50 N.Y.2d 183, 406 N.E.2d 445] which held that " '*the imposition of liability for intentional interference with performance of a contract . . . must depend on the worth and significance of the objective interest to be protected.* [When] a contract . . . may be avoided by the other contracting party at his election . . . the party seeking to impose liability enjoys no legally enforceable right to performance; his interest is a mere expectancy—a hope of future contractual relations.' [Citation.]" (*PMC, Inc.* v. *Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 599.)

Thus, *PMC* concluded "[i]t is logical to force the plaintiff to plead and prove an enforceable contract when stating a cause of action for intentional interference with contract. If a party is not obligated to perform a contract and may refuse to do so at his election without penalty, then the other party to that agreement enjoys nothing more than an expectancy. A stranger intentionally interfering with that relationship quite obviously does not disturb an enforceable contract but only a *prospective* economic relationship." (*PMC, Inc.* v. *Saban Entertainment, Inc., supra,* 45 Cal.App.4th at pp. 599-600.)

We agree with *PMC*'s analysis and conclusion that a cause of action for intentional interference with contractual relations requires an underlying enforceable contract, and where the underlying contract is unenforceable, only a claim for interference with prospective economic advantage lies. We believe this rule is a proper extension of the California Supreme Court's admonition that courts should not blur the analytical line between the two interference torts and its recognition that the "formally cemented economic relationship" created by an "*existing* contract" is entitled to greater solicitude than a relationship falling short of that. (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th at p. 392, italics in original.)

Accordingly, plaintiff in the instant case has not sufficiently pled and cannot maintain a cause of action for intentional interference with a

contractual relationship because the alleged lease agreement upon which plaintiff's action is based is unenforceable as a matter of law.[9]

### III. Interference With Prospective Economic Advantage

Plaintiff contends the court erred in ruling, as a matter of law, that the "fair competition" privilege was a complete defense to its cause of action for intentional interference with prospective economic advantage because whether the privilege applies is a question of fact.

California law has long recognized a "competition privilege" which protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor. The privilege applies where " '(a) the relation [between the competitor and third person] concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least in part to advance his interest in his competition with the other.' . . . ." (*Charles C. Chapman Building Co.* v. *California Mart* (1969) 2 Cal.App.3d 846, 855-856 [82 Cal.Rptr. 830].) In short, the competition privilege furthers free enterprise by protecting the right to compete *fairly* in the marketplace. One may compete for an advantageous economic relationship with a third party as long as one does not act improperly or illegally.

---

[9]Plaintiff cites *Golden* v. *Anderson* (1967) 256 Cal.App.2d 714 [64 Cal.Rptr. 404]; *Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55 [12 Cal.Rptr. 319]; and *Kozlowsky* v. *Westminster National Bank* (1970) 6 Cal.App.3d 593 [86 Cal.Rptr. 52], as authority for the proposition that one is subject to tort liability for inducing a party to breach a contract even if the contract is unenforceable. However, these cases did not draw a clear distinction between tort liability for interference with a contract and tort liability for interference with prospective economic advantage, as they were decided before *Della Penna* at a time when that distinction was still blurred in California case law. The rule we adopt from *PMC* is not inconsistent with these cases, as it does not preclude imposition of tort liability for interference with an unenforceable contract; it merely limits the scope of such liability to a claim for interference with prospective economic advantage.

Plaintiff also cites *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1127 [270 Cal.Rptr. 1, 791 P.2d 587], for the principle that ". . . the contractual relationship is at the will of the parties, not at the will of outsiders. [Citations.]" However, *Pacific Gas & Electric* did not hold that interference with a voidable or unenforceable contract gives rise to a cause of action for interference with contractual relations. Indeed, the Supreme Court in *Pacific Gas & Electric* noted without disapproval that "[m]any cases have treated claims of interference with voidable and terminable contracts as coming within the cause of action for interference with prospective [economic] advantage. [Citations.]" (*Id.* at p. 1128, fn. 4.) Because it was unnecessary to its decision, the *Pacific Gas & Electric* court refrained from addressing the issue later decided in *Della Penna*—i.e., whether an analytical distinction should be drawn between the two interference torts.

In *Della Penna,* the California Supreme Court took this principle a step further by holding that ". . . a plaintiff seeking to recover for an alleged interference with prospective contractual or economic [advantage] must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful *by some legal measure other than the fact of interference itself.*" (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th at p. 393, italics added.) *Della Penna* further held the change in rules for pleading and proving intentional interference with prospective economic advantage applied retroactively. (*Id.* at pp. 391-392, fn. 4.)

Since the crux of the competition privilege is that one can interfere with a competitor's *prospective* contractual relationship with a third party as long as the interfering conduct is not independently wrongful (i.e., wrongful apart from the fact of the interference itself), *Della Penna's* requirement that a plaintiff plead and prove such wrongful conduct in order to recover for intentional interference with prospective economic advantage has resulted in a shift of burden of proof. It is now the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful and, therefore, was *not* privileged rather than the defendant's burden to prove, as an affirmative defense, that it's conduct was *not* independently wrongful and therefore *was* privileged.

 In the instant case, Linens 'N Things presented evidence in support of its second motion for summary adjudication that the leasing of retail space is an area of competition between Linens 'N Things and the plaintiff and that it did not act improperly or illegally in competing with plaintiff for the subject retail space but only offered La Jolla a more lucrative lease. Linens 'N Things points out that the only act of interference alleged in plaintiff's first amended complaint was that Linens 'N Things offered La Jolla more money per square foot to rent the subject retail space. Linens 'N Things also presented evidence that it did not act with the intention of illegally restraining trade, but only with the intent of competing with plaintiff for attractive retail space. In short, Linens 'N Things presented evidence establishing its conduct was not wrongful by any legal measure other than the fact of interference itself.

As noted in *PMC,* "[a] defendant meets its burden upon [a motion for summary adjudication] if it proves 'one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.' (Code Civ. Proc., § 437c, subd. (o)(2).) Once a defendant or cross-defendant has met this threshold requirement, the '*burden shifts to the*

plaintiff or cross-complainant to show that a triable issue of one or more material facts exists . . . .' [Citation.]" (*PMC, Inc.* v. *Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 590, italics added.) Thus, regardless whether we view independently wrongful conduct on the part of Linens 'N Things as an element of plaintiff's cause of action, or the absence of such conduct as an affirmative defense, Linens 'N Things evidentiary showing that it engaged in no such wrongful conduct was sufficient to shift the burden to plaintiff to show there was a triable issue of fact as to that issue.

Plaintiff failed to meet that burden in opposing Linens 'N Things' motion for summary adjudication. Plaintiff has steadfastly maintained that Linens 'N Things' inducing La Jolla to break off relations with plaintiff by offering a more lucrative lease is sufficient in and of itself to subject Linens 'N Things to tort liability. Plaintiff has never shown or even contended that Linens 'N Things engaged in conduct which is wrongful by some measure beyond the fact of interference itself.[10] The record establishes that Linens 'N Things merely competed successfully for a lease of the subject retail premises by offering La Jolla a better deal. The court did not err in granting Linens 'N Things' motion for summary adjudication of plaintiff's cause of action for intentional interference with prospective economic advantage.

### IV. *Delayed Signing of Formal Order on Linens 'N Things' Motion for Summary Adjudication*

The record contains a minute order showing the court granted Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action for intentional interference with prospective economic advantage on March 18, 1994, and directed Linens 'N Things' counsel to prepare a formal order. Counsel for defendants submitted a proposed order to the court in March 1994. Judgment against plaintiff was entered on July 19, 1994, and an

---

[10]*Della Penna* did not explain what sort of conduct would be "wrongful" apart from the interference itself. Justice Mosk's concurring opinion suggested the wrongfulness requirement would be satisfied by conduct that is independently tortious or a restraint of trade. (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th at pp. 408-409.) The Oregon Supreme Court suggested the requirement of wrongful conduct would be satisfied by conduct that "violates 'a statute, or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.' " (*Arntz Contracting Co.* v. *St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 477 [54 Cal.Rptr.2d 888], quoting *Top Serv. Body Shop, Inc.* v. *Allstate Ins. Co.* (1978) 283 Or. 201 [582 P.2d 1365, 1371].) In *Willard* v. *Caterpillar, Inc.* (1995) 40 Cal.App.4th 892 [48 Cal.Rptr.2d 607], the court tested the defendant's conduct for "wrongfulness" under *Della Penna* in light of the suggestion in the Restatement Second of Torts that "conduct which is 'illegal or unfair or immoral according to the common understanding of society' may subject one to tort liability. [Citation.]" (*Id.* at p. 920.) Linens 'N Things' alleged interference with plaintiff's *prospective* lease agreement with La Jolla was not *independently wrongful* under any of these measures.

amended judgment was entered on September 15, 1994. Plaintiff filed its notice of appeal on September 7, 1994.

While compiling the record on appeal, counsel for defendants discovered the court's file contained no formal order on Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action. Because plaintiff's counsel refused to stipulate to entry of Linens 'N Things' proposed order nunc pro tunc, Linens 'N Things appeared ex parte to ask the court to enter the order. On January 30, 1995, the court granted Linens 'N Things' ex parte request over plaintiff's opposition and signed the formal order granting Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action.

■ Plaintiff contends the court erred in signing the order because plaintiff had by then perfected its appeal, resulting in the stay of all proceedings in the trial court upon the judgment or order appealed from under Code of Civil Procedure section 916. We find no error in the court's belated signing of the order.

"Where a judgment or order is rendered, but, through negligence or inadvertence of the clerk, is not entered at the proper time, the court may order its entry nunc pro tunc. [Citations.]" (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment § 65, p. 499, italics omitted.) " '[W]here an order has actually been made and its entry omitted, . . . it may be subsequently entered, and if justice requires, may be made to take effect nunc pro tunc as of the date when it was actually made. . . .' " (*Hess* v. *Gross* (1943) 56 Cal.App.2d 529, 532 [133 P.2d 1], quoting *In re Skerrett* (1889) 80 Cal. 62, 64 [22 P. 85], italics omitted.)

Here, the court's minute order of March 18, 1994, clearly reflects that Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action was granted and Linens 'N Things was to prepare a formal order. In opposition to Linens 'N Things' ex parte request to have the formal order entered nunc pro tunc, plaintiff submitted no declaration or other evidence to rebut defense counsel's declaration that the same order had been submitted to the court in March 1994 shortly after the motion was heard. Thus, the only reasonable inference from the uncontroverted evidence is that the court inadvertently neglected to enter the formal order submitted by Linens 'N Things in March 1994.

The perfection of plaintiff's appeal did not deprive the court of its inherent power to remedy what was merely a clerical error by entering the omitted

order nunc pro tunc.[11] (*Roth* v. *Marston* (1952) 110 Cal.App.2d 249, 251 [242 P.2d 375].) The court's action is properly viewed as the correction of a *clerical*, as opposed to *judicial* error because it merely corrected the record to reflect an order actually made prior to judgment rather than entering a new order not previously made. (See *Estate of Doane* (1964) 62 Cal.2d 68, 72 [41 Cal.Rptr. 165, 396 P.2d 581] (dis. opn. of Peters, J.).)

Assuming arguendo the court erred by signing the order after entry of judgment and the filing of plaintiff's appeal, the error was harmless, as plaintiff has not shown any resulting prejudice. "Procedural defects which do not affect the substantial rights of the parties do not constitute reversible error. (Code Civ. Proc., § 475.)" (*Lever* v. *Garoogian* (1974) 41 Cal.App.3d 37, 40 [115 Cal.Rptr. 856].) Plaintiff contends the trial court "attempted to buttress its granting" of the second motion for summary adjudication by specifying its reasons for doing so in the formal order, and "[t]he absence of these specified reasons may directly affect the outcome of [the] appeal as to [the second motion]." Although the point is unclear, we interpret plaintiff's argument to be that the court's belated entry of the formal order on the second motion for summary adjudication was prejudicial because our disposition of the appeal will be influenced by the court's specification of reasons for granting Linens 'N Things' motion. Plaintiff's suggestion of prejudice overlooks the fact that our review of the motion for summary adjudication is de novo, and we review only the ruling and not its rationale. (*California Aviation, Inc.* v. *Leeds*, *supra*, 233 Cal.App.3d at p. 731.) We would further point out there is no finding or legal conclusion in the court's formal order that was not raised as a point of argument in Linens 'N Things' moving papers.

To vacate the judgment and send the case back merely to allow for entry of the same formal order on the second motion for summary judgment prior to a new judgment and new appeal would be a pointless waste of judicial and litigant time and resources. The merits of the appeal have been fully briefed by the parties and plaintiff is in no way prejudiced by our considering them now instead of later. The court's belated signing of the formal order on Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action provides no basis for disturbing the judgment.

---

[11]Although Linens 'N Things' ex parte application requested nunc pro tunc entry of the order, neither the court's minute order on the ex parte hearing nor the formal order it signed stated that the formal order was signed nunc pro tunc. Presumably, the court intended that the order be entered nunc pro tunc as requested. In any event, we deem the formal order signed by the court on January 30, 1995, to be entered nunc pro tunc as of March 18, 1994, the date the court decided Linens 'N Things' motion for summary adjudication of plaintiff's sixth cause of action.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Work, J., concurred.