Filed 7/26/23  Levidow v. Ahmad CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEITH LEVIDOW,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALIYAH AHMAD,<br><br>    Defendant and Appellant. | B318821<br><br>(Los Angeles County Super. Ct. No. 21STRO05931 |

APPEAL from an order of the Superior Court of Los Angeles County, Shelley Kaufman, Judge.  Affirmed.

Aliyah Ahmad, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Defendant and appellant Aliyah Ahmad challenges a civil harassment restraining order issued against her in favor of plaintiff and respondent Keith Levidow following an evidentiary hearing. Ahmad contends clear and convincing evidence did not support the trial court's finding that she harassed Levidow. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts as they were presented at the restraining order hearing. The parties are tenants in an apartment building in Hollywood. Levidow lived in the building for a decade before Ahmad moved in, and he describes himself as "the neighborhood watch guy" for the building and its residents. Soon after Ahmad moved to the building, Levidow reported her to the landlord, accusing her of stealing packages delivered to other apartments. From there, relations between the parties deteriorated to the point that each petitioned for a civil harassment restraining order against the other. Ahmad's petition was granted; Levidow's was not. After that order expired, Ahmad was granted a second civil harassment restraining order against Levidow on April 21, 2021, continuing until April 21, 2024.

The present dispute began in October 2021, when Levidow again petitioned for a restraining order against Ahmad. His petition is not in the record, but based on his statements to the court at the hearing, it appears Levidow accused Ahmad of stalking him with a video camera, knocking on his door or wall when she passed his apartment, and threatening to kill his dog during an encounter at the parking garage. Ahmad filed a written opposition to Levidow's petition, and obtained a two-week extension of the hearing in order to "review a transcript."

2

At the hearing, Levidow testified to incidents when, he contended, Ahmad waited for him in order to record him on video. He also played video recordings from a door camera. The first of these, according to Levidow, showed Ahmad "literally in front of my door, knocking on my door." Another video, also from Levidow's door camera, purported to show Ahmad passing his door immediately after Levidow heard a thumping noise caused by Ahmad kicking his wall as she passed. Finally, Levidow played a video recording that he described as showing Ahmad approach in her car while Levidow and his leashed dog were in the garage; Ahmad purportedly threatened, " 'I will run that dog over,' " while screaming at Levidow.[1]

Levidow also offered in evidence an e-mail from the building manager, stating, " 'I recall distinctly asking you each to take separate, specific hallways to your respective apartments. I also asked you to please not get in the elevator if the other is in it. And then if you see each other on or off property, please just turn and walk the other way.' " In the same e-mail, the manager also recalled " 'seeing video of [Ahmad] waiting by the back gate and filming [Levidow] when [he] arrived.' " Levidow concluded his testimony by informing the court that he suffered from serious health conditions, and that Ahmad's conduct caused him substantial emotional distress.

---

[1] Levidow appears to have played the videos directly from his cell phone in open court. Copies of the videos are not included in the record on appeal, and the audio portions were not transcribed. Ahmad also played a video in open court, but neither a copy of the video nor a transcript of the audio is included in the record on appeal.

3

Ahmad testified on her own behalf. First, she testified that Levidow's petition "is nothing more than retaliation for my having successfully obtained two restraining orders" against Levidow, and "everything that [Levidow] told you today is false and misleading." She also argued that the court should disregard the incident where she was accused of threatening Levidow's dog because that "complaint was previously rejected by the court when [Levidow] presented it in 2019, and I should not have to re-litigate that incident." In response to the court's questions, Ahmad denied ever kicking or knocking on Levidow's door. She did admit, however, to passing by Levidow's door even though there were other routes she could take to get to her apartment, and even though she had a restraining order against Levidow, "because the restraining order is on him, not on me."

After the parties rested, the court stated its intention to issue a restraining order against Ahmad. The court first noted that "[b]eing yelled at in close proximity in the garage where the respondent is driving, saying, 'I will run over that dog,' that would cause a dog owner emotional distress. That, coupled with patterns of harassment, as he described, as hiding in the bushes." The court further explained that "[w]hat stands out in particular as a course of conduct is the testimony of the petitioner, acknowledged by the respondent, of going past his door after she obtained a restraining order. While she's not restrained from going by his door, there's no legitimate purpose to doing so, knocking on his door. [¶] Court finds the petitioner credible, that he saw her kick the door, knock on the door, and goes by her [*sic*] door when she has other ways to go in this building, knowing that there's a restraining order, knowing that there's a history between these parties." Finally, the court noted that it inferred

4

Ahmad passed Levidow's door for the purpose of annoying him: "quite frankly, ma'am, the fact that you go by his door – I know you say you didn't kick it or knock on it. . . .  if you were not trying to incite something or stalk or bother him, you wouldn't go by his door under the circumstances of this case."

The court issued a restraining order directing Ahmad to stay at least 100 yards away from Levidow, except that she was ordered to stay 30 yards away while at the apartment building where they both live.  The restraining order is dated December 30, 2021, and expires on April 21, 2024, the expiration date of Ahmad's previously issued restraining order against Levidow. Ahmad filed a timely notice of appeal on February 22, 2022.

## DISCUSSION

### I.    Applicable Legal Principles

Code of Civil Procedure section 527.6 provides that a court may, upon a showing of clear and convincing evidence, issue a restraining order to prevent "harassment."  Subdivision (b)(3) of the statute defines "[h]arassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

"The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record."  (*R.D. v. P.M.* (2011) 202 Cal.App4th 181, 188.)  "When reviewing a finding that a fact has been proved by clear and

5

convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) We "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 1011–1012.)

Several rules of appellate review and procedure also guide our analysis. " 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . .' [Citation.]" (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) "[T]he appellant has the burden of affirmatively demonstrating error by providing an adequate record. [Citations.] . . . [I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." (*Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9.) The obligation to furnish an adequate record for our review applies equally to self-represented appellants. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

"In reviewing the trial court's ruling, we must consider the facts before the court *at the time of its ruling,* and not by reference to evidence produced at a later date." (*Sacramento Area Flood Control Agency v. Dhaliwal* (2015) 236 Cal.App.4th 1315, 1328, fn. 5.) Further, " 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of

6

matters which were before the trial court for its consideration.' [Citation.]"[2] (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 442.)

We note Ahmad asks this court to review the restraining order without providing the petition on which the order is based, Ahmad's written response to that petition, or any of the exhibits that were presented to the trial court in support of, and in opposition to, the petition.  Our review is limited to the record provided, and, as explained above, " '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'  [Citation.]"  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  "To the extent the court relied on documents not before us, our review is hampered.  We cannot presume error from an incomplete record.  [Citation.]"  (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.)

## II.    Substantial Evidence Supports the Trial Court's Findings

We must determine whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that Ahmad participated in a course of conduct that amounted to "harassment" within the

---

[2] For these reasons, we deny Ahmad's motion to augment. Ahmad seeks to augment the record with the two restraining orders she obtained against Levidow, a transcript of an earlier restraining order hearing on January 15, 2019, and her petition in support of her second restraining order against Levidow.  As discussed below, the materials in question were not presented to the trial court at the hearing on Levidow's motion.  "[T]he record cannot be 'augmented' with material that was not before the trial court.  [Citations.]"  (*In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209.)

7

meaning of the statute, and that the harassment caused Levidow to suffer substantial emotional distress.

Applying the substantial evidence standard explained above, and invoking the presumption in favor of the judgment on matters where the record is silent, we find substantial evidence supports the trial court's finding of a course of conduct amounting to harassment. We must presume the video recordings presented at the hearing supported Levidow's contentions that Ahmad knocked at his door, and that she threatened to run over his dog. Ahmad admitted that she passed Levidow's door, and that even after obtaining a restraining order she continued to do so, although she did not have to pass Levidow's apartment to reach her own. There was evidence, in the form of an e-mail from the building manager, confirming that he had seen a video recording of Ahmad waiting for Levidow and filming him once he arrived at the apartment building. Although Ahmad denied knocking at Levidow's door, the court found credible Levidow's testimony that Ahmad kicked or knocked on his door as she passed. The inference that the court drew, that Ahmad was hoping either to annoy Levidow or to goad him into violating the restraining order against him, was a reasonable one. In addition, the trial court found credible Levidow's testimony that the foregoing course of conduct by Ahmad caused him to suffer substantial emotional distress. These findings were sufficient to grant Levidow's petition for a restraining order under Code of Civil Procedure section 527.6.

Ahmad contends the trial court erred by granting the restraining order without the benefit of her written response to Levidow's petition. When the hearing began, the court had not yet seen Ahmad's written opposition to Levidow's petition and

8

she did not bring a copy with her to show the court. However, the trial court suggested that Ahmad argue the points set out in her written response, and she did so without objecting. On appeal Ahmad does not identify any issue raised in the petition that she was prevented from addressing at the hearing. Moreover, the record includes neither Levidow's petition nor Ahmad's written opposition. Ahmad has not demonstrated the trial court erred in proceeding without her written response, or that she was prejudiced in any way. (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 884 [procedural defects not affecting the parties' substantial rights are not reversible error].)

Ahmad next argues that the trial court should have discounted Levidow's testimony because he was threatened with sanctions at a previous hearing, and because he should be considered a "vexatious litigant." The trial court rejected both arguments. "[I]n a bench trial, the trial court is the 'sole judge' " of the credibility of witnesses (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582), and we do not second-guess the court's determination that Levidow was a credible witness.

Ahmad's final argument is that the court should not have given any weight to the incident involving her alleged threat to run over Levidow's dog, on the ground that the incident was previously litigated and determined in her favor years earlier at the hearing where Levidow unsuccessfully sought a restraining order against Ahmad. We must reject this contention. "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. [Citations.]" (*DKN Holdings*

9

*LLC v. Faerber* (2015) 61 Cal.4th 813, 825.) Nothing in the record establishes that at a prior restraining order hearing, the parties actually litigated whether Ahmad threatened Levidow or his dog.[3] In the absence of evidence showing that, at a prior hearing, the court determined that Ahmad did not threaten Levidow's dog, we can only conclude that "the 'issue' decided in the prior proceeding was whether appellant established a basis for issuance of a restraining order, not whether *all* the incidents to which she testified were true." (*In re Marriage of Martindale & Ochoa* (2018) 30 Cal.App.5th 54, 60.) In any event, in this case the trial court did not rely solely on the alleged threat to Levidow or his dog. The court described a course of conduct that included Ahmad repeatedly kicking or knocking on Levidow's door while making unnecessary trips past his apartment. For all of these reasons, we reject Ahmad's contention that a prior determination of fact barred the trial court from granting Levidow's petition for a restraining order.

---

[3] It is undisputed that the trial court was not shown a transcript of the prior hearing on which Ahmad relies. Ahmad argues the trial court "was not interested" in reviewing the transcript, but the record shows otherwise. The trial court specifically told Ahmad: "If you have something in the transcript that you want to show the court so I can take judicial [notice] of a court certified transcript, I can do that." Ahmad responded that she would present the transcript "towards the end," but she concluded her presentation of evidence without doing so.

## DISPOSITION

The order is affirmed.  As respondent did not participate in this appeal, no costs are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

11