[No. A057561. First Dist., Div. Two. Nov. 15, 1994.]

DONALD GORDON BLACK et al., Plaintiffs and Appellants, v.
BANK OF AMERICA N.T. & S.A. et al., Defendants and Respondents.

**COUNSEL**

Donald Gordon Black, in pro. per., and for Plaintiffs and Appellants.

Cherie L. Harpell, Louis J. Bachleder, James N. Roethe and Michael J. Halloran for Defendants and Respondents.

**OPINION**

**KLINE, P. J.**—Donald Gordon Black (Black), Catherine Black and six related companies owned and/or controlled by Black (collectively, appellants) appeal the dismissal of their action against respondents Bank of America N.T. & S.A. (the Bank) and certain bank officers. They assert the court improperly sustained without leave to amend respondents' demurrer to their first amended complaint. We affirm.

BACKGROUND

For approximately 17 years the Bank loaned money to various agricultural enterprises organized and managed by Black. These companies and partnerships, known as the "Black Group," negotiated their loans with the Bank simultaneously. As security for these loans the Bank was given a lien on the crop that "floated" from year to year, regardless of whether the Bank advanced any money for the next year's crop.

In the spring of 1984, the Bank entered into written loan agreements with three companies in the Black Group for the 1983-1984 operating year. At the same time, these companies orally agreed to reduce their outstanding indebtedness to the Bank. According to appellants, the Bank agreed to monitor

these companies and notify them by June 30, 1984, if it would not be providing financing for the 1984-1985 season. The Bank did not provide such notice by that date.

Black thereafter began negotiations with the Bank for loans for the 1984-1985 operating year. Appellants assert the Bank repeatedly indicated it would renew existing loans and grant new loans to the Black Group. Despite these representations, on May 6, 1985, the Bank informed the Black Group that it would not provide crop and equipment loans for the 1984-1985 operational year, and that all guarantees of existing loans were called as of that date. As a result of this decision, three of the companies comprising the Black Group subsequently filed for bankruptcy.

On November 26, 1991, Donald and Catherine Black, along with their affected companies, filed this action for civil conspiracy, which set forth eight causes of action, including claims for fraud, breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress.[1] In this complaint appellants alleged respondents conspired to conceal from them the decision not to grant them further loans so that appellants would continue to invest in the 1985 crops, and the crops would be more valuable when the Bank foreclosed on this security. Appellants asserted they first learned of the conspiracy in November 1990, and that the most recent acts in furtherance of the conspiracy occurred during November and December 1990. This complaint was later amended on January 2, 1992.

On February 5, 1992, respondents demurred to the first amended complaint and asserted the complaint (1) failed to state facts sufficient to constitute a cause of action and (2) was barred by the applicable statutes of limitation. On March 10, the court conducted a hearing on the demurrer. The court concluded each cause of action was barred by the applicable statute of limitations, and thus sustained the demurrer without leave to amend and dismissed the action. Appellants subsequently moved for reconsideration of that ruling, which was denied.

This timely appeal followed.

---

[1]This was not the first case appellants filed against respondents based on these facts. On May 5, 1986, appellants filed a complaint alleging, among other things, causes of action for emotional distress, breach of the covenant of good faith and fair dealing, misrepresentation and fraud based on the Bank's refusal to loan money to fund appellant's agricultural enterprises. (Black v. Bank of America (Super. Ct. S.F. County, 1986, No. 857395.) This complaint was later amended and, in 1991, was dismissed under the five-year rule. Appellants also attempted to raise the same claims in a cross-cross complaint filed in 1989 and amended in 1990. The court granted the Bank's motion for judgment on the pleadings and denied leave to amend.

## DISCUSSION

■ Appellants argue the court erred in denying them the chance to amend their complaint to properly state a claim for conspiracy. They assert that if they had been permitted to amend they could adequately allege facts showing acts in furtherance of the conspiracy continued until January 1991, and that the conspiracy claim was thus not time-barred. Respondents contend the court properly sustained the demurrer because appellants cannot state a claim for conspiracy between the Bank and its officers or employees.

It has long been the rule in California that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72 [35 Cal.Rptr. 652].) This rule was recently reaffirmed by our Supreme Court in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 512, footnote 4 [28 Cal.Rptr.2d 475, 869 P.2d 454].[2] *Applied Equipment* held that a party to a contract may not be held liable in tort for conspiring to interfere with its own contract, overruling a contrary holding in *Wise*. (*Id.*, at pp. 507-508, 510.) In the course of its discussion, the court in *Applied Equipment* quoted *Wise*'s definition of the agent's immunity rule, noted that Supreme Court cases had "endorsed and applied" that rule and stated that "[n]othing in [the decision in *Applied Equipment*] is intended to abrogate or impair the agent's immunity rule." (*Id.*, at p. 512, fn. 4.)

*Applied Equipment* creates a conundrum, however, because other portions of its discussion suggest corporate employees *may* be liable for conspiring with the corporation, despite their acting on behalf of the corporation, when they owe a duty to the plaintiff independent of the corporation's duty. (7 Cal.4th at pp. 511-514.) The example of a duty that would give rise to agents' liability for conspiracy discussed in *Applied Equipment* was the " 'duty to abstain from injuring the plaintiff through express misrepresenta-tion[.]' " (7 Cal.4th at pp. 512-513, quoting *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 48 [260 Cal.Rptr. 183, 775 P.2d 508].) Given the broadness of the type of duty that would apparently suffice to remove agents' immunity, and the ease with which a violation thereof may be pled, this exception to the rule of agents' immunity, it seems to us, threatens to

---

[2]On January 27, 1994, the Supreme Court granted review from our original decision in the present case. (*Black* v. *Bank of America* (Oct. 14, 1993) A057561 [nonpub. opn.] review granted Jan. 27, 1994 (S036313).) On July 28, 1994, the case was transferred back to us with directions to vacate the earlier decision and reconsider the case in light of *Applied Equipment*, *supra*.

swallow the rule. The Supreme Court does not reconcile its approval of this broad exception to the rule of agent immunity with its express affirmation of the rule itself.

In its discussion of conspiracy liability, *Applied Equipment* discussed approvingly several of the cases relied upon by the parties here. In *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], the owner of a bar and restaurant sued his insurance company and, as agents of that company, an insurance adjusting firm, a law firm and individual employees of those firms, alleging a conspiracy among the defendants to deprive him of the fire insurance benefits under his policy. The court concluded the plaintiff had stated a claim against the insurers for breach of the duty of good faith and fair dealing but upheld dismissal of the conspiracy claim against the noninsurer defendants because, not being parties to the insurance contract, they were not bound by the implied duty of good faith and fair dealing and because "as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy." (*Id.*, at p. 576.)

*Doctors' Co.* v. *Superior Court*, *supra*, 49 Cal.3d 39, held that an attorney and an expert witness employed by an insurance company could not be held liable for conspiring with that company to violate statutory provisions prohibiting unfair insurance claims practices. This conclusion was based in part on the fact the statutory duties were owed only by the insurer itself and not by the noninsurer defendants, and in part on the fact the noninsurer defendants were acting as agents of the insurer.

In *Younan* v. *Equifax Inc.* (1980) 111 Cal.App.3d 498 [169 Cal.Rptr. 478], the plaintiff sued his disability insurance carrier and two of the insurer's agents, alleging a conspiracy to deprive the plaintiff of disability insurance benefits by arranging for a false medical report that would provide a plausible reason for denying benefits. The court concluded that the agents could not be held liable for constructive fraud because that charge rested on a fiduciary duty of disclosure owed to the plaintiff only by the insurer itself. (*Id.*, at pp. 516-517.) The agents were held subject to liability for conspiracy to commit actual fraud, however, because "they had a duty to abstain from injuring the plaintiff through express misrepresentation, independent of the insurer's implied covenant of good faith and fair dealing." (*Doctors' Co.* v. *Superior Court*, *supra*, 49 Cal.3d at p. 48.)

Unlike *Applied Equipment* and the cases upon which it based its analysis, which involved agents and employees outside the corporate structure of the principal, the present case involves allegations of conspiracy between a

single corporation and its own employees. Given their facts, neither *Applied Equipment* nor the opinions on which it relied had occasion to consider the application of the agent's immunity rule or its exceptions to a single entity situation such as presented in the case before us. In our view, the agent immunity rule has particular force in such a situation. A corporation is, of course, a legal fiction that cannot act at all except through its employees and agents. (See *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 25 [276 Cal.Rptr. 303, 801 P.2d 1054].) When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire.[3] " ' "[I]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. . . ." ' " (*Kerr* v. *Rose* (1990) 216 Cal.App.3d 1551, 1564 [265 Cal.Rptr. 597], quoting *Shasta Douglas Oil Co.* v. *Work* (1963) 212 Cal.App.2d 618, 624 [28 Cal.Rptr. 190]; *Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 12-13 [101 Cal.Rptr. 499, 51 A.L.R.3d 991].) To hold that a subordinate employee of a corporation can be liable for conspiring with the corporate principal would destroy what has heretofore been the settled rule that a corporation cannot conspire with itself.[4] In the absence of a clear statement from the Supreme Court that this change in the law is intended, we will not so impair the agent's immunity rule.

The trial court properly concluded appellants could not avoid the statute of limitations by pleading a claim for conspiracy and thus correctly sustained the demurrer and dismissed the case.

---

[3]Appellants cannot rely upon the exception to the rule of agent's immunity allowing corporate employees to be held liable for conspiracy with their principal when they act for their own individual advantage and not solely on behalf of the corporation, or act beyond the scope of their authority. (See, e.g., *Doctors' Co.* v. *Superior Court, supra*, 49 Cal.3d at p. 47; *Wise* v. *Southern Pacific Co., supra*, 223 Cal.App.2d at p. 72; *Pink Supply Corp.* v. *Hiebert, Inc.* (8th Cir. 1986) 788 F.2d 1313, 1317; *Buschi* v. *Kirven* (4th Cir. 1985) 775 F.2d 1240, 1252.) In the verified first amended cross-complaint appellants filed in their previous case (Black v. Bank of America, *supra*, No. 857395) they alleged the individual defendants committed the assertedly wrongful acts "in the course and scope of their respective employment and agency for the Bank." They cannot now, in a desperate attempt to state a claim for conspiracy, directly contradict these allegations and assert that the same officers were acting *beyond* the scope of their authority. (*Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877-878 [6 Cal.Rptr.2d 151] [plaintiff may not avoid demurrer by pleading facts that contradict facts pleaded in earlier actions].)

[4]The individual defendants in this case were Bank employees who carried out but did not create Bank policies. Liability therefore cannot attach to these defendants under the rule that directors and officers of a corporation may become liable for the corporation's tortious conduct if they "directly ordered, authorized or participated in the tortious conduct." (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 785 [157 Cal.Rptr. 392, 598 P.2d 45].)

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

Smith, J., and Phelan, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 2, 1995.