**ACCUIMAGE DIAGNOSTICS CORP., a Nevada corporation, Plaintiff,**

v.

**TERARECON, INC., a Delaware corporation; Robert Taylor, an individual; Douglas Boyd, an individual; Motoaki Saito, an individual; and Does 1 to 100. inclusive, Defendants.**

**No. C 02–5029 MHP.**

United States District Court, N.D. California.

April 18, 2003.

Roderick A. McLeod, Esq., Brett M. Schuman, Esq., Morgan Lewis & Brockius LLP, San Francisco, CA, for Plaintiff AccuImage Diagnostics Corp.

Beth H. Parker, Esq., Deborah A. Adler, Esq., Brian C. Rocca, Esq., Bingham McCutchen LLP, San Francisco, CA, for Defendants TeraRecon, Inc., Robert Taylor and Motoaki Saito.

Crista M. Anderson, Esq., Steven K. Taylor, Esq., Keker & Van Nest, LLP, San Francisco, CA, for Defendant Douglas Boyd.

### MEMORANDUM & ORDER RE MOTION TO DISMISS

PATEL, Chief Judge.

Plaintiff AccuImage Diagnostics Corp. ("AccuImage") brought this action against defendants TeraRecon, Inc. ("TeraRecon"), Robert Taylor ("Taylor"), Douglas Boyd ("Boyd"), Motoaki Saito ("Saito"),

and others alleging false advertising and trade dress infringement in violation of the Lanham Act, unfair competition, common law and statutory misappropriation of trade secrets, conspiracy, breach of fiduciary duty, breach of contract, intentional and negligent interference with economic advantage, and unjust enrichment. Defendants TeraRecon, Boyd and Saito filed a joint motion to dismiss and defendant Boyd filed a separate motion to dismiss all claims against him. Now before the court are defendants' motions to dismiss.

*BACKGROUND* [1]

Plaintiff AccuImage and defendant TeraRecon are corporations engaged in the development of software for the medical imaging applications business.

In 1996, AccuImage began developing its AccuView Diagnostic Imaging Workstation ("AccuView"), which is a computer software system for the management and post-processing of medical imaging data from various devices, including CT scans and other imaging modalities. In 1999, AccuImage received FDA approval for the Accuview Workstation. AccuView utilizes plug-in software modules to expand its capabilities to provide advanced processing functions. One such module developed by AccuImage, the AccuScore program, enables physicians to analyze and generate reports detailing the amount of calcium in patients' coronary arteries in minutes. This capability and AccuScore's comprehensive, user-configurable report generation and database package purportedly gives AccuImage a competitive advantage over other companies in the medical imaging application business, such as defendant TeraRecon. The source code for the AccuScore application, patient database, and report generator is the intellectual property of AccuImage.

Defendant Taylor worked on the AccuScore program as a consultant and employee of AccuImage and later became AccuImage's Chief Executive Officer. In these capacities with AccuImage, Taylor executed an Employment Agreement, which contained a "Non–Solicitation and Non–Competition" provision, in addition to a "Confidentiality, Trade Secrets, and Assignment of Inventions" provision. In late October 2000, Taylor began having disagreements with the AccuImage Board of Directors. Although Taylor resigned from his position as CEO in November 2000, he asked to remain an AccuImage employee while he began circulating his resume to other companies because of concerns about his immigration status. AccuImage complied with Taylor's request and appointed him Chief Technology Officer pursuant to the terms of a two-month employment agreement. While still an AccuImage employee, Taylor allegedly assisted TeraRecon at an industry trade show in late November 2000.

Defendant Saito is the founder, President, Chief Executive Officer and Chairman of the Board of TeraRecon. In this capacity, Saito expressed an interest in hiring Taylor to defendant Boyd, who plaintiff claims was then both an AccuImage board member and a major TeraRecon shareholder. When AccuImage expressed concern to Boyd about Saito's interest in hiring Taylor, Boyd allegedly assured AccuImage there was no need for concern because TeraRecon was not going to hire Taylor.

In early 2001, TeraRecon purchased the Real Time Visualization division of Mitsubishi Electric, whose IiVS workstation performed medical image processing. Plaintiff claims, however, that the IiVS workstation had no calcium scoring capabilities whatsoever, nor did TeraRecon

---

**1.** All facts in this section are contained in the complaint, unless otherwise cited.

have such capabilities as of the beginning of 2001.

In February 2001, Taylor resigned his position with AccuImage and immediately started working for TeraRecon as its Chief Operating Officer and Executive Vice-President. Plaintiff claims that when Taylor resigned, Boyd allowed Taylor to keep his AccuImage laptop computer, which contained highly confidential and sensitive proprietary and trade secret information. At the same time, TeraRecon hired away several other key AccuImage employees who had knowledge and possession of AccuImage's source code and proprietary information.

Plaintiff claims that less than two months after Taylor's arrival, TeraRecon publicly demonstrated a new product called the Aquarius Workstation, which was a renamed version of the IiVS workstation with a calcium scoring capability. TeraRecon was granted FDA approval for the Aquarius Workstation in May 2001. AccuImage claims that TeraRecon's Aquarius workstation utilizes the source code for the AccuScore software program.

Based on the above conduct, AccuImage alleges that TeraRecon, Taylor, Saito and Boyd conspired to steal AccuImage's trade secrets and proprietary information. Beginning in November 2000, plaintiff claims that defendants created a plan to obtain a calcium scoring capability because defendants realized that such capability would improve TeraRecon's sales prospects. AccuImage also claims that TeraRecon previously expressed an interest in acquiring AccuImage, but that when this plan did not work out, Taylor's departure from AccuImage provided defendants with the opportunity it needed to obtain the calcium scoring capability.

In addition, plaintiff claims that defendants competed unfairly against AccuImage by making false representations about AccuImage's products to actual and potential AccuImage customers around the country. Given TeraRecon's use of the look and feel of the AccuScore program's reports in its Aquarius workstation, plaintiff maintains that defendants are intentionally trying to confuse and win over AccuImage's customers by persuading them to buy TeraRecon's product instead. Specifically, plaintiff claims that defendants have intentionally misled existing and potential AccuImage customers by telling them that AccuImage's products are not FDA approved.

On October 17, 2002, AccuImage filed a complaint alleging twelve causes of action against TeraRecon, Taylor, Saito and Boyd for: 1) false advertising in violation of the Lanham Act; 2) trade dress infringement in violation of the Lanham Act; 3) unfair competition; 4) violation of California Business and Professions Code section 17500; 5) trade secret misappropriation in violation of California Civil Code section 3426 *et seq.*; 6) common law misappropriation; 7) conspiracy; 8) breach of fiduciary duty; 9) breach of contract; 10) intentional interference with economic advantage; 11) negligent interference with economic advantage; and 12) unjust enrichment. Many of plaintiff's claims are brought against both TeraRecon and against Saito or Boyd in their capacity as directors, officers or shareholders of AccuImage and TeraRecon. In the complaint, AccuImage maintains that the conduct of TeraRecon, Taylor, Saito and Boyd has and will cause injury to AccuImage in an amount to be proven at trial, but in excess of $3,000,000.

On December 13, 2002, Boyd filed a motion to dismiss claims five, six, seven, eight and twelve. On December 20, 2002, TeraRecon, Taylor and Saito filed a joint motion to dismiss the following claims: TeraRecon moved to dismiss claims one, two, six, seven, ten and eleven; Taylor moved to dismiss claims one, six, seven, ten and

eleven; and Saito moved to dismiss claims four, five, six, seven and twelve.

*LEGAL STANDARD*

### I. *Motion to Dismiss*

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F.,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989). Indeed, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether [the plaintiff] is entitled to offer evidence to support [the plaintiff's] claim." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

Finally, while Rule 8(f) of the Federal Rules of Civil Procedure requires a liberal reading of complaints, *Yamaguchi v. United States Dept. of the Air Force,* 109 F.3d 1475, 1480–81 (9th Cir.1997), "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996).

*DISCUSSION*

Each ground for dismissal will be considered in turn.

### I. *Claim Seven—Conspiracy*

■ As a threshold matter, civil conspiracy is not a separate and distinct cause of action under California law. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1228 (9th Cir. 1997), *cert. denied,* 523 U.S. 1021, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998). Therefore, the court dismisses claim seven against all defendants with prejudice because plaintiff cannot plead conspiracy as an independent cause of action. *See id.*

■ While "[c]ivil conspiracy is not a cause of action," it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510–511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). To properly plead a conspiracy cause of action, the plaintiff must allege "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Mox, Inc. v. Woods,* 202 Cal. 675, 677, 262 P. 302 (1927). Yet "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of America,* 30 Cal.App.4th 1, 4–5, 35 Cal.Rptr.2d 725 (1994) (internal quotations omitted); *Wise v. S. Pacific Co.,* 223 Cal.App.2d 50, 72–73, 35 Cal.Rptr. 652 (1963), *overruled on other grounds by Applied Equip.,* 7 Cal.4th 503, 28 Cal. Rptr.2d 475, 869 P.2d 454 (1994). Specifically, the "agent's immunity rule" proscribes conspiracy claims between and against agents and their principals. *See Doctors' Co. v. Super. Ct.,* 49 Cal.3d 39, 45, 260 Cal.Rptr. 183, 775 P.2d 508 (1989). But the agent's immunity rule does not apply in cases where directors and officers of a corporation "directly order[ ], authorize[ ], or participate[ ] in the tortious conduct." *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).

Here, the complaint does not properly put defendants on notice of the conspiracy claims with which they are charged.

While claim seven erroneously states a claim against all defendants for civil conspiracy, plaintiff provides only vague details about the type of conspiracies defendants allegedly participated in. *See* Compl. ¶¶ 63–65. To successfully plead this cause of action, plaintiff must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action. *See Mox*, 202 Cal. at 677, 262 P. 302. Such amended allegations, however, must be made within the sections of the complaint that contain plaintiff's claims for the underlying torts.

■ However, plaintiff cannot indiscriminately allege that conspiracies existed between and among all defendants. Given the holdings of *Black* and *Wise*, plaintiff cannot state a claim against Saito for conspiring with TeraRecon while he was acting in his official capacity. *See Black*, 30 Cal.App.4th at 4–5, 35 Cal.Rptr.2d 725; *Wise*, 223 Cal.App.2d at 72–73, 35 Cal. Rptr. 652. Plaintiff may, however, amend the complaint to allege conspiracies between, for example, Boyd and Taylor (after Taylor left AccuImage) or Saito and Boyd if they acted beyond the scope of their employment so long as such allegations do not run afoul of *Black* and *Wise*. Plaintiff also cannot allege a conspiracy involving Taylor to interfere with his AccuImage employment contract because there is no tort liability against a party to a contract who breaches or interferes with the contract. *See Applied Equip.*, 7 Cal.4th at 515, 28 Cal.Rptr.2d 475, 869 P.2d 454 (holding that a stranger to the contract may be liable in tort for interfering with the contract, but not a party to the contract itself).

## II. *Claim One—Violation of the Lanham Act section 43(a)*

Plaintiff alleges that TeraRecon and Taylor have engaged in false advertising in violation of section 43(a) of the Lanham Act. Compl. ¶¶ 36–41. Defendants move to dismiss this claim because they argue plaintiff did not allege facts with sufficient particularity to satisfy the elements of the claim.

■ To state a claim for false advertising under section 43(a) of the Lanham Act, plaintiff must allege that: (1) defendant made a false statement of fact in a commercial advertisement or promotion about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. Lanham Act § 43(a) (codified as amended at 15 U.S.C. § 1125(a)); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).

■ The court finds that Taylor is entitled to more specific allegations of what conduct plaintiff claims is actionable as to Taylor under section 43(a) of the Lanham Act. The complaint alleges that defendants misrepresented AccuImage's product when they "told current and potential AccuImage customers that, among other things, AccuImage's products are not FDA approved when, in fact, they are." Compl. ¶ 37. Plaintiff also alleges that Taylor "made false and misleading representations ... to actual and potential AccuImage customers around the country to persuade them to purchase TeraRecon's ... products." Compl. ¶ 33. The complaint does not, however, allege any facts regarding the location, timing, or content of Taylor's allegedly false statements.

The rest of the false advertising allegations in the complaint simply mimic the elements of the cause of action and do not plead sufficient facts. Compl. ¶¶ 37–41. Therefore, the court grants Taylor's motion to dismiss claim one with leave to amend.

The court also finds that TeraRecon does not have sufficient notice of the corporation's allegedly actionable conduct under this claim. Plaintiff uses the language of the statute to plead this cause of action but does not provide sufficient factual information about TeraRecon's actionable conduct aside from the allegation that they misrepresented whether or not AccuImage's product was FDA approved. *See* Compl. ¶ 37. As stated above, plaintiff must make more detailed allegations to satisfy the elements of the cause of action, such as: the circumstances under which TeraRecon made false statements, how the statements entered interstate commerce, and how plaintiff has been or is likely to be damaged as a result of defendants' false statements. Accordingly, the court grants TeraRecon's motion to dismiss claim one with leave to amend.[2]

### III. *Claim Two—Violation of the Lanham Act section 43(a)*

■ Plaintiff alleges that defendant TeraRecon engaged in trade dress infringement in violation of section 43(a) of the Lanham Act. Compl. ¶¶ 42–46. To state a claim for trade dress infringement, plaintiff must allege: (1) that its claimed trade dress is inherently distinctive; (2) that its claimed trade dress is nonfunctional; and (3) that defendant's product creates a likelihood of consumer confusion. *See, e.g., Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1258 (9th Cir.2001).

■ Plaintiff alleges that: 1) its AccuScore program "produces a calcium scoring and diagnostic report that is that is proprietary, unique and distinctive in the medical imaging applications industry"; 2) that the "look and feel of the reports generated by AccuScore are non-functional"; and 3) that TeraRecon's report copied the "overall 'look and feel' of the AccuScore report such that the report generated by TeraRecon's Aquarius workstation is virtually indistinguishable from the AccuScore report," which "has caused or is likely to cause customer confusion." Compl. ¶¶ 43–45.

Despite these allegations, the complaint does not sufficiently put TeraRecon on notice of the trade dress claim alleged. As it stands now, the complaint does little more than mimic the language of the statute. To state a claim for trade dress infringement, plaintiff must plead with specificity how the AccuScore reports are unique and inherently distinctive. Plaintiff also has not plead sufficient facts for the court to determine whether the alleged trade dress is nonfunctional. Thus, plaintiff must provide more detail about the layout and appearance of the report to give the court sufficient information to determine wheth-

---

**2.** TeraRecon also argues that plaintiff fails to satisfy the "commercial advertisement or promotion" prong within the first element of a false advertising claim. The Ninth Circuit has held that statements satisfy this prong if they are: (1) commercial speech; (2) made by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) made either in a "classic advertising campaign" or are more informal types of "promotion" that are "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir.1999). Given the court's determination that plaintiff failed to sufficiently plead the cause of action, the court does not reach the issue of whether plaintiff satisfied this particular element of the claim.

er plaintiff's report is eligible for trade dress protection. The court therefore dismisses claim two with leave to amend.

## IV. Claim Five—Misappropriation of Trade Secrets—Violation of Civil Code section 3426 et seq.

Plaintiff's fifth claim for relief alleges that all defendants misappropriated AccuImage's trade secrets in violation of California Civil Code section 3426 et seq. Compl. ¶¶ 54–57. Only Boyd and Saito move to dismiss this claim.

■ To state a cause of action for misappropriation of trade secrets under the Uniform Trade Secrets Act ("UTSA"), plaintiff must plead two primary elements: (1) the existence of a trade secret,[3] and (2) misappropriation of the trade secret. See Cal. Civ.Code § 3426.1(b). Neither defendant challenges plaintiff's claim that AccuImage's technology constitutes a "trade secret." Instead, Boyd and Saito challenge plaintiff's claim on the grounds that their alleged conduct does not constitute "misappropriation" under the statute.

### A. Saito's Motion to Dismiss Claim Five

Saito argues that plaintiff alleged no actionable conduct on his part aside from expressing an interest in hiring a new employee and acting in his position as a corporate executive for TeraRecon.

■ A corporate director or officer's status "neither immunizes [such] person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts." Frances T. v. Village Green Owners Ass'n., 42 Cal.3d 490, 505, 229 Cal.Rptr. 456, 723 P.2d 573 (1986).

However, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir.1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"). But mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other "unreasonable participation" in the unlawful conduct by the individual. See, e.g., PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368, 1389, 93 Cal.Rptr.2d 663 (2000).

■ Despite plaintiff's allegations that Saito willfully conspired to misappropriate AccuImage's trade secrets and that he expressed an interest in hiring Taylor away from AccuImage, the court holds that plaintiff fails to allege sufficient specific conduct by Saito to state a claim for statutory trade secret misappropriation. While plaintiff argues that Saito participated directly in the tortious conduct, Compl. ¶¶ 21, 31, 33, 34, nowhere does the complaint sufficiently allege that Saito acted beyond his capacity as a corporate officer of TeraRecon. If plaintiff can more clearly allege actionable conduct by Saito outside the scope of his employment, the court could consider whether such conduct forms a properly plead misappropriation of trade secrets claim against him.

Saito also argues that plaintiff's conspiracy to misappropriate trade secrets claim should be dismissed because of the opera-

---

**3.** The UTSA defines the term "trade secret" as: information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ.Code § 3426.1(d).

tion of the "agent's immunity rule." *See Doctors' Co.*, 49 Cal.3d at 45, 260 Cal.Rptr. 183, 775 P.2d 508 ("agent's immunity rule" proscribes viability of conspiracy claims between and against agents and their principals). As stated above, plaintiff cannot allege that Saito conspired with TeraRecon to misappropriate AccuImage's trade secrets in his capacity as the President, Chief Executive Officer and Chairman of the Board of TeraRecon. Therefore, the court dismisses plaintiff's misappropriation of trade secrets claim against Saito with leave to amend.

### B. *Boyd's Motion to Dismiss Claim Five*

█ Boyd presents two arguments in support of his position that both misappropriation claims should be dismissed against him. First, Boyd argues that plaintiff has not alleged that Boyd misappropriated any confidential information. Next, Boyd argues that the misappropriation claims must fail because plaintiff does not "allege and prove that the use of disclosure of the trade secret was unauthorized or nonconsensual."

Both plaintiff and Boyd misstate the elements needed to state a claim for misappropriation under the UTSA. The UTSA defines "misappropriation" to include two types of conduct: (1) acquisition, or (2) disclosure or use.[4] *See* Cal. Civ.Code § 3426.1(b). Plaintiff fails to allege that Boyd directly misappropriated trade secrets. Even if Boyd knew of TeraRecon's misappropriation of AccuImage's trade secrets and intentionally allowed Taylor to take his AccuImage laptop with him to his new employment, Boyd still never acquired, possessed, disclosed or used AccuImage's trade secrets without express or implied consent.[5] *See* Cal. Civ.Code § 3426.1(b).

█ Furthermore, even if the court assumes that Boyd was "one of TeraRecon's largest shareholders," his status as a shareholder still does not satisfy either the possession or the disclosure or use elements of the cause of action. Corporate shareholders are ordinarily not liable for the torts of the corporation. *Wyatt*, 24 Cal.3d at 785, 157 Cal.Rptr. 392, 598 P.2d 45. Shareholders may be held liable when they "specifically direct or authorize the

---

**4.** Under section 3426.1(b) of the UTSA, "misappropriation" means:

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) derived from or through a person who had utilized improper means to acquire it;

(ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) derived from or through a person who owed a duty to the person seeking

relief to maintain its secrecy or limit its use; or

(C) before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**5.** In determining what constitutes "use" and "disclosure" of trade secrets in the context of misappropriation, courts have held that mere possession of trade secrets is not sufficient to satisfy this element of the cause of action. *See Gibson–Homans Co. v. Wall–Tite, Inc.*, 1992 WL 512411 (C.D.Cal.1992) (holding that mere possession of a notebook in which defendant recorded wall adhesive formulas during his employment with plaintiff company without actual use of the formulas to the commercial detriment of plaintiff did not constitute misappropriation of trade secret).

wrongful acts." *Id.* While the *PMC* court held that liability can be imposed upon "a corporate shareholder ... who knows or has reason to know about tortious misappropriation ... and allows it to occur," this narrow holding applies to the defendants under the particular circumstances of the case in their capacity as directors, officers and shareholders. 78 Cal.App.4th at 1389, 93 Cal.Rptr.2d 663. Therefore, *PMC* does not support a finding of liability by Boyd as a corporate shareholder. *See id.*

■ While the court does not find that Boyd directly misappropriated AccuImage's trade secrets, plaintiff alleges that Boyd conspired to misappropriate trade secrets. Evidence of involvement in a civil conspiracy does not always require overt action. *Mox*, 202 Cal. at 677–678, 262 P. 302. "[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *Id.* Rather, participation in a civil conspiracy can be inferred from circumstantial evidence of defendant's conduct. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1479 (9th Cir.1986). An alleged conspirator's "requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." *Wyatt,* 24 Cal.3d at 785, 157 Cal.Rptr. 392, 598 P.2d 45 (internal quotations omitted).

Boyd cannot persuasively argue that plaintiff's conspiracy claim against him is groundless. First, the underlying tort of statutory misappropriation is still alleged against TeraRecon and Taylor. Second, plaintiff pleads facts that sufficiently implicate Boyd in an agreement to misappropriate AccuImage's intellectual property. Finally, even if Boyd did not overtly commit

the alleged wrongful acts, he can be liable as a coconspirator for misappropriation if he entered the agreement and he allowed Taylor to keep his laptop and begin new employment with TeraRecon. From this circumstantial conduct, Boyd's involvement in the conspiracy can be inferred. *See Dimidowich,* 803 F.2d at 1479. The court therefore denies Boyd's motion to dismiss plaintiff's fifth claim for relief.

## V. *Claim Six—Common Law Misappropriation*

■ Plaintiff alleges a claim for common law misappropriation based on an allegation that all defendants misappropriated AccuImage's "proprietary information and trade secrets." Compl. ¶¶ 58–61. The court will address TeraRecon and Taylor's argument that this common law cause of action is preempted by California's enactment of the UTSA in 1985.

First, the court examines whether California case law resolves the preemption issue. Plaintiff states that no California case has ever held that common law misappropriation of trade secret causes of action are preempted by the UTSA. To support its position that common law misappropriation claims are not preempted, plaintiff cites one case where a lower court's issuance of an injunction prohibiting disclosure of trade secrets on both common law and UTSA misappropriation of trade secrets claims was upheld. *See Fleishman v.Super. Ct.,* 102 Cal.App.4th 350, 358, 125 Cal. Rptr.2d 383 (2002) (malicious prosecution case where preemption issue not raised). Defendants argue that this case is irrelevant and cannot be relied on as precedent to find that the UTSA does not preempt common law misappropriation claims. The court finds no case where both common law and UTSA misappropriation of trade secrets claims were upheld based on conduct occurring after the 1985 enactment of

the UTSA. Thus, it appears that whether the UTSA preempts common law misappropriation of trade secrets claims is an open question in California.

Second, the court turns to concepts of statutory interpretation to determine whether the UTSA preempts common law misappropriation of trade secrets claims. The parties argue that the language of the UTSA resolves the issue. Section 3426.7 of the UTSA provides: "[e]xcept as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets." Cal. Civ.Code § 3426.7. The provision also states that contractual remedies, whether based on misappropriation of a trade secret or not, are not affected by the title *nor are other civil remedies* [e.g., common law] that are not based upon misappropriation of a trade secret. *Id.* Defendants argue that this language preempts plaintiff's noncontractual and nonstatutory trade secret tort claims for common law misappropriation. Plaintiff argues that section 3426.7 is ambiguous and that the word "preemption" appears nowhere in the text of the statute.

Only if the legislature enacts a statute intending to "cover the entire subject or . . . to occupy the field" does a statute supersede the common law. *I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438, 702 P.2d 596 (1985) (stating that the general rule is that statutes do not supersede the common law). More specifically, the enactment of "general and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace common law dealing with the subject matter." *Id.*

Here, the eleven provisions of the UTSA set forth: the definition of "misappropria-

tion" and "trade secret," injunctive relief for actual or threatened misappropriation, damages, attorney fees, methods for preserving the secrecy of trade secrets, the limitations period, the effect of the title on other statutes or remedies, statutory construction, severability, the application of title to acts occurring prior to the statutory date, and the application of official proceedings privilege to disclosure of trade secret information. Cal. Civ.Code §§ 3426.1–3426.11. The comprehensive structure and breadth of the UTSA provides strong evidence of legislative intent to supersede claims for common law misappropriation after the enactment of the UTSA. *See also* 3 Matthew Bender, California Torts § 40.50[2][a] (2002) ("With respect to trade secret misappropriations occurring *after* January 1, 1985, it is clear that the UTSA supercedes the common law in the areas where the UTSA has specific provisions.").

Furthermore, in indicating what statutes and other remedies are superseded, section 3426.7 of the California Civil Code provides that the UTSA does not supersede. . . (2) other civil [nonstatutory] remedies that are not based upon misappropriation of a trade secret. . . . The implication is that common law remedies based on misappropriation of trade secrets are superseded.

California courts, however, have been more opaque, even equivocal at times. *See, e.g., Fleishman v. Superior Court*, 102 Cal.App.4th at 358, 125 Cal.Rptr.2d 383 (accepting trial court's conclusion of probability of prevailing on the merits on the statutory and common law misappropriation of trade secrets); *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal.App.4th 34, 51 n. 17, 6 Cal.Rptr.2d 602 (1992)(noting absence of conflict between UTSA and common law but if there were the Act would control); *American Credit Indemnity Co.*

*v. Sacks,* 213 Cal.App.3d 622, 632, 262 Cal. Rptr. 92 (1989)(applying UTSA to post–1985 conduct but offering that under the UTSA or common law the customer list was a trade secret).

The California Supreme Court's most recent pronouncement on the UTSA addressed the issue of continuing misappropriation spanning the effective date of the Act. The Court noted, in keeping with the language of section 3426.10, that if a misappropriation occurred before the effective date of the Act, but occurred again after the effective date "the claim must be divided in two...one common law claim and one UTSA claim" respectively. *Cadence Design Systems, Inc. v. Avant! Corp.,* 29 Cal.4th 215, 224, 127 Cal.Rptr.2d 169, 57 P.3d 647 (2002). Certainly the strong suggestion here is that a common law claim does not survive after the UTSA. This is the most recent decision under the UTSA by either the California Supreme Court or by any of its intermediate courts of appeal.

The language of *Cadence Design* and the absence of other clear California authority, taken together with persuasive decisions of district courts from other states that have enacted similar versions of the UTSA finding that common law misappropriation claims are preempted in their jurisdictions,[6] persuades this court that the UTSA occupies the field in California. Plaintiff's common law misappropriation of trade secrets claim is therefore deemed superseded because the conduct at issue occurred after the enactment of the UTSA. Accordingly, plaintiff's sixth claim for relief is dismissed as to all defendants with prejudice.

## VI. Claim Four—Unfair Competition

Plaintiff alleges that all defendants except Boyd have engaged in unfair competition. Compl. ¶¶ 50–53. Only Saito moves to dismiss on grounds that the complaint does not state a claim against him for unfair competition.

California Business & Professions Code prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200; *Cel–Tech Communications Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Because section 17200 is written in the disjunctive, it contemplates three distinct categories of unfair competition. *Cel–Tech,* 20 Cal.4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (conduct must be unlawful, unfair, or fraudulent to be actionable under section 17200); *AICCO, Inc. v. Ins. Co. of N. Am.,* 90 Cal.App.4th 579, 587, 109 Cal.Rptr.2d 359 (2001). Although "the unfair competition law's scope is sweeping, it is not unlimited." *Cel–Tech,* 20 Cal.4th at 182, 83 Cal. Rptr.2d 548, 973 P.2d 527.

The complaint alleges that the relevant actionable conduct by defendants was unlawful. While section 17200 has broad application, *AICCO,* 90 Cal.App.4th at 587, 109 Cal.Rptr.2d 359 ("Virtually any federal, state, or local law can serve as a predicate for a § 17200 claim"), its scope is restricted to violations of law, not contract. Indeed, the unlawful practices barred by the section include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.,* 27 Cal.App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (2d Dist.1994). Plaintiff's complaint

6. *Learning Curve Toys, L.P. v. Playwood Toys, Inc.,* 1999 WL 529572, at *2 (N.D.Ill. July 20, 1999) ("[P]laintiff may not resort to common law causes of action as well as the ITSA to obtain relief for the same alleged wrongdoing."); *Auto Channel, Inc. v. Speedvision Network, LLC,* 144 F.Supp.2d 784, 788–89 (W.D.Ky.2001); *Allegiance Healthcare Corp. v. Coleman,* 232 F.Supp.2d 1329, 1335 (S.D.Fla. 2002).

makes one such allegation against Saito for violation of the UTSA.

 As stated above in section IV(A), plaintiff fails to allege any specific unlawful conduct on the part of Saito. Plaintiff's allegation that "defendants TeraRecon, Saito, Boyd and Taylor have engaged in a combination, plan, conspiracy and concerted course of action to steal AccuImage's trade secrets and proprietary information" and that "Saito ... knowingly and willfully conspired and agreed with Taylor, and the other employees it hired away from AccuImage to breach their agreements with AccuImage," Compl. ¶¶ 25, 64, do not sufficiently plead actionable conduct by Saito for unfair competition.

Saito also argues that plaintiff's conspiracy to engage in unfair competition claim should be dismissed because of the operation of the "agent's immunity rule." See Doctors' Co., 49 Cal.3d at 45, 260 Cal.Rptr. 183, 775 P.2d 508. It appears to be an open question in California whether the agent's immunity rule applies to Business & Professions Code section 17200 unfair competition claims. Indeed, no California case has addressed this issue directly. Assuming that the agent's immunity rule does apply to section 17200 causes of action, plaintiff would have to allege that Saito acted beyond the scope of his employment to bring a claim for conspiring with his corporate principal. See Black, 30 Cal.App.4th at 6, 35 Cal.Rptr.2d 725. Although the complaint alleges that Saito is the founder, President, Chief Executive Officer and Chairman of the Board of TeraRecon and that he engaged in the conduct detailed above, plaintiff nowhere alleges that Saito acted outside the scope of his authority as an officer of TeraRecon.

Given the lack of specific unlawful conduct alleged against Saito and without reaching the issue of whether the agent's immunity rule definitively applies to section 17200, the court dismisses claim four with leave to amend. The viability of a claim against Saito for conspiracy to engage in unfair competition will turn on what if any additional facts plaintiff can allege.

## VII. Claim Eight—Breach of Fiduciary Duty

Plaintiff alleges breach of fiduciary duty against Boyd and Taylor. Compl. ¶¶ 67–71. Only Boyd moves to dismiss this claim.

 To state a claim for breach of fiduciary duty, plaintiff must allege: 1) the existence of a fiduciary relationship; 2) its breach; and 3) damage proximately caused by that breach. See, e.g., Pierce v. Lyman, 1 Cal.App.4th 1093, 1101, 3 Cal. Rptr.2d 236 (1991), superseded by statute on other grounds by Pavicich v. Santucci, 85 Cal.App.4th 382, 102 Cal.Rptr.2d 125 (2000). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." Id. at 1101–02, 3 Cal.Rptr.2d 236.

 Plaintiff alleges that until March 2001, Boyd was a member of the Board of Directors of AccuImage. Compl. ¶ 5. As a board member, Boyd clearly owed a fiduciary duty to plaintiff AccuImage. See Cal. Corp.Code § 309; Frances T., 42 Cal.3d at 506 n. 13, 229 Cal.Rptr. 456, 723 P.2d 573. Plaintiff alleges that during Boyd's time as an AccuImage board member, he knew of a scheme to misappropriate AccuImage's intellectual property and to allow Taylor to keep his AccuImage laptop when moving to his new employment at TeraRecon. Given these facts, plaintiff successfully states a claim for breach of fiduciary duty and resulting

damages against Boyd. Therefore, the court denies Boyd's motion to dismiss claim eight.

## VIII. *Claim Ten—Intentional Interference with Economic Advantage*

TeraRecon and Taylor move to dismiss plaintiff's tenth cause of action for intentional interference with economic advantage. While the tenth claim for relief as set forth in the complaint is labeled "Intentional Interference with Economic Advantage," the body of the claim states causes of action for two separate torts: intentional interference with contractual relations and intentional interference with prospective economic advantage. Compl. ¶¶ 76–81. In the interest of addressing all issues raised by the parties' papers, the court will address both of plaintiff's intentional interference claims.

### A. *Plaintiff's Intentional Interference with Contractual Relations Claim*

■ To plead an interference with contractual relations claim, plaintiff must allege: 1) the existence of a valid contract between plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage. *Quelimane Co. v. Stewart Title*, 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998) (holding "wrongfulness" is not an additional element in an interference with contract claim).

■ Plaintiff makes conclusory allegations that valid "contracts" exist between itself and an unspecified third party. *See* Compl. ¶ 77. Absent notice to the defendants of some facts surrounding the type or nature of the "contracts" their conduct allegedly interfered with, the court must dismiss this claim with leave to amend.

### B. *Plaintiff's Intentional Interference with Economic Advantage Claim*

■ To state a claim for intentional interference with economic advantage, plaintiff must allege: 1) an existing economic relationship or one "containing the probability of future economic benefit"; 2) knowledge by the defendant of the relationship; 3) acts by defendant designed to disrupt the relationship; 4) actual disruption of the relationship; 5) damages proximately caused by the acts of the defendant. *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal.4th 376, 380 n. 1 & 392–93, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995). Significantly, the act must be "wrongful by some legal measure other than the fact of interference itself." *Id.* at 393, 45 Cal. Rptr.2d 436, 902 P.2d 740. Thus, it is "plaintiff['s] burden to prove, as an element of the cause of action itself, that the defendant['s] conduct was independently wrongful." *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal.App.4th 867, 881, 60 Cal. Rptr.2d 830 (1997).[7]

■ Again, the court finds that plaintiff makes conclusory allegations that economic relationships between plaintiff and another exist that "contain[ ] a probable

---

7. The California Supreme Court has not defined the conduct that would be deemed wrongful within the meaning of this tort. Justice Mosk suggests, however, that conduct may be wrongful if it is independently tortious or restrains trade. *See Della Penna*, 11 Cal.4th at 408–409, 45 Cal.Rptr.2d 436, 902 P.2d 740 (Mosk, J., concurring). The Oregon Supreme Court has suggested that wrongful conduct might exist where defendant "violate[d] a statute, regulation or recognized rule of common law." *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App.4th 464, 477, 54 Cal.Rptr.2d 888 (1996) (citing *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365, 1371 (1978)).

future economic benefit or advantage to the plaintiff." *See id.* at 380 n. 1, 45 Cal.Rptr.2d 436, 902 P.2d 740. "[A]n essential element of the tort of interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered. Although this need not be a contractual relationship, an existing relationship is required." *Roth v. Rhodes,* 25 Cal.App.4th 530, 546, 30 Cal.Rptr.2d 706 (1994) (holding that motion for judgment on the pleadings was properly granted because plaintiff alleged an existing relationship only with speculative "future patients"). Similarly here, the complaint alleges no specific existing or prospective relationships and relies on conclusory language that merely repeat the elements of the tort. Such vague allegations do not satisfy federal pleading requirements because defendants are not on notice of which relationships they allegedly disrupted. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

Furthermore, plaintiff fails to allege wrongful conduct on behalf of defendants to satisfy the elements of the tort. Given the court's dismissal of plaintiff's Lanham Act claim for false advertising with leave to amend, plaintiff has not demonstrated that defendants were engaging in wrongful conduct. To successfully bring this claim, plaintiff must allege specific wrongful acts that defendant committed that gave rise to the interference with plaintiff's alleged economic relationships. Therefore, the court grants defendants' motion to dismiss claim ten with leave to amend.

## IX. *Claim Eleven—Negligent Interference with Economic Advantage*

■ Plaintiff brings a cause of action for negligent interference with economic advantage against TeraRecon and Taylor. Both defendants move to dismiss this claim. To state a claim for negligent interference with economic advantage, plaintiff must allege defendant owed plaintiff a duty of care in addition to the elements required to state a cause of action for intentional interference with economic advantage. *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803–04, 157 Cal.Rptr. 407, 598 P.2d 60 (1979).

As stated above, plaintiff fails to satisfy the underlying elements of an interference with economic advantage claim.

■ Plaintiff also fails to allege that either TeraRecon or Taylor owed a duty to plaintiff that would invoke this kind of tort claim. Plaintiff claims that TeraRecon has a duty to AccuImage because the two companies compete against each other and competitors generally have a duty not to engage in unfair competition. *See PMC,* 78 Cal.App.4th at 1381, 93 Cal.Rptr.2d 663. Defendants, on the other hand, argue that California law extends a qualified privilege to compete in business dealings because the law favors free competition. *See A–Mark Coin Co. v. General Mills, Inc.,* 148 Cal.App.3d 312, 323, 195 Cal.Rptr. 859 (1983). The court does not find that a duty of care exists between TeraRecon and AccuImage as competitors.

■ Plaintiff also alleges that Taylor owed a duty to plaintiff in support of its negligent interference with economic advantage claim. *See J'Aire,* 24 Cal.3d at 804, 157 Cal.Rptr. 407, 598 P.2d 60. The complaint alleges that Taylor entered into an employment agreement with plaintiff and signed confidentiality provisions that created contractual obligations between Taylor and AccuImage. Compl. ¶¶ 17–19, 24. Thus, plaintiff's proper remedy against Taylor is for breach of fiduciary duty and breach of contract, both claims that Taylor does not move to dismiss. *See* Compl. ¶¶ 67–71, 72–75. While a duty of care may be created by statute or contract, allowing plaintiff to recover on both tort and contract theories of liability because of Taylor's alleged conduct before and after

terminating his employment with plaintiff would be improper. *See J'Aire*, 24 Cal.3d at 803, 157 Cal.Rptr. 407, 598 P.2d 60.

Finally, the court fails to understand what aspects of defendants' alleged conduct was negligent. The complaint is rife with allegations of intentional, not negligent, conduct. Thus, the court believes that a jury could not find that defendants negligently interfered with plaintiff's economic relationships. For the reasons stated above and in the absence of allegations of negligent conduct, the court dismisses claim eleven with leave to amend.

## X. *Claim Twelve—Unjust Enrichment*

Plaintiff alleges that all defendants have "received revenues and saved costs which they would not otherwise have received and saved" but for the misuse of AccuImage's trade secrets or proprietary information. Compl. ¶¶ 87–91. Only Saito and Boyd move to dismiss this claim.

 To state a claim for unjust enrichment, plaintiff must allege: 1) receipt of a benefit, and 2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000). California courts interpret the term "benefit" to "denote any form of advantage." *See, e.g., Ghirardo v. Antonioli*, 14 Cal.4th 39, 51, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996). But for a benefit to be conferred, it is "not essential that money be paid directly to the recipient by the party seeking restitution." *Cal. Fed. Bank v. Matreyek*, 8 Cal. App.4th 125, 132, 10 Cal.Rptr.2d 58 (1992). However, to state a claim upon which relief can be granted, plaintiff must allege that Saito and Boyd actually received a benefit at plaintiff's expense.

### A. *Saito's Motion to Dismiss Claim Twelve*

 Plaintiff fails to allege sufficient facts to support an unjust enrichment claim against Saito. The allegation that Saito received a benefit because of his position either as an officer or shareholder of TeraRecon does not satisfy pleading requirements. Furthermore, the additional facts that plaintiff includes in its opposition, such as the allegation that "[a]ny benefit to TeraRecon's bottom line as a result of defendants' tortious activity will surely inure to Saito's individual benefit," do not state a valid claim because plaintiff fails to allege any specific facts regarding the amount of benefit that Saito received or any detail of the circumstances surrounding Saito's actual receipt of the benefit.

Similarly, plaintiff's sweeping allegation that Saito as a TeraRecon shareholder received a benefit because of his alleged ownership interest in the corporation fails to state a claim for unjust enrichment. Therefore, the court dismisses claim twelve as to Saito with leave to amend.

### B. *Boyd's Motion to Dismiss Claim Twelve*

 Plaintiff's allegation that Boyd was unjustly enriched in his position as a TeraRecon shareholder and as a member of AccuImage's Board of Directors also fails to meet pleading requirements. Even if the court assumes that Boyd was "one of TeraRecon's largest shareholders," plaintiff fails to allege facts establishing that Boyd received a benefit from the alleged wrongful conduct. Indeed, plaintiff does not allege that Boyd sold his stock holdings or personally received a benefit at plaintiff's expense. Nor does plaintiff explain why the court should hold both TeraRecon and its shareholders liable for the benefit the defendant corporation allegedly received by misappropriating plaintiff's trade secrets. If TeraRecon is eventually forced to disgorge the unjust benefit the corporation received, any benefit that

Boyd as a shareholder received would also then return to plaintiff. The court finds that plaintiff fails to demonstrate Boyd was unjustly enriched at the expense of AccuImage. Boyd's motion to dismiss claim twelve is granted with leave to amend.

## CONCLUSION

The court would have been less rigorous in the disposition of these claims had plaintiff been more selective in its pleadings. Defendants simply do not have sufficient notice of the basis for many of the claims against them. Contrary to plaintiff's view, the court holds that discovery is not the appropriate time to ascertain whether such fundamental facts indeed exist.

For the foregoing reasons, the court: 1) GRANTS with prejudice defendants' motions to dismiss claim six and claim seven against all defendants; 2) GRANTS with leave to amend defendants' motions to dismiss claim one against TeraRecon and Taylor, claim two against TeraRecon, claim four against Saito, claim five against Saito, claim ten against TeraRecon and Taylor, claim eleven against TeraRecon and Taylor, and claim twelve against Boyd and Saito; and 3) DENIES defendants' motions to dismiss claim five against Boyd, and claim eight against Boyd.

IT IS SO ORDERED.